[No. 83731-7.   En Banc.]

Argued May 19, 2011.     Decided December 29, 2011.

*In the Matter of the Personal Restraint of* CHAD A.
PIERCE, *Petitioner*.

*Chad A. Pierce*, pro se.

*Robert M. McKenna, Attorney General*, and *Douglas W. Carr, Assistant*, for respondent.

*Harry Williams IV, Suzanne Lee Elliott, Sarah A. Dunne, Nancy Lynn Talner*, and *Travis Stearns* on behalf of Washington Association of Criminal Defense Lawyers, Washington Defender Association, and American Civil Liberties Union of Washington Foundation, amici curiae.

¶1 STEPHENS, J. — This case involves the authority of the Department of Corrections (Department) to deduct funds from an inmate's trust account. Chad Alan Pierce, a Washington State inmate, filed a personal restraint petition challenging the Department's collection of costs of incarceration and legal financial obligations (LFOs) from his account. He asserts that his judgment and sentence prohibits the Department from making such deductions. We disagree and hold that the Department has statutory authority to deduct costs of incarceration independent of the judgment and sentence. In addition, the Department may deduct LFOs while Pierce is confined, and it need not issue a notice of payroll deduction before initiating its collection efforts. Accordingly, we dismiss Pierce's personal restraint petition.

## FACTS AND PROCEDURAL HISTORY

¶2 A jury convicted Pierce of two counts of first degree child molestation in 2006. The trial court sentenced Pierce to an indeterminate life sentence with a 108-month minimum term. The judgment and sentence reflects that the trial court imposed LFOs consisting of restitution and a $500 victim penalty assessment. The court waived all other financial obligations listed in the judgment and sentence,

including costs of incarceration under former RCW 9.94A-.760(2) (2004).[1] Pierce's judgment and sentence provides that payment of his LFOs "shall be made to the King County Superior Court Clerk according to the rules of the Clerk and the following terms: . . . [o]n a schedule established by the defendant's Community Corrections Officer." Personal Restraint Pet., Ex. 3, at 3.

¶3 Shortly after Pierce's transfer to prison, the Department began deducting costs of incarceration and LFOs from his inmate trust account. Pierce filed several internal grievances with the Department challenging the deductions as unlawful. The Department acknowledges it has collected approximately $30 in costs of incarceration (COI)[2] and $30 in LFOs from Pierce's account.

¶4 After his unsuccessful attempts to prevent the deductions, Pierce filed this personal restraint petition pro se arguing that the Department is prohibited from collecting costs of incarceration because the judgment and sentence waived costs of incarceration under former RCW 9.94A.760. He also contends that the Department cannot deduct LFOs from his account until he is released because his judgment and sentence provides for payment of his LFOs on a schedule set by his community corrections officer. Pierce further claims that the community custody tolling statute delays his payment obligations while he is confined. Finally, Pierce asserts that the Department's deductions of LFOs are unlawful because the Department failed to issue a notice of payroll deduction prior to initiating its collection efforts.

---

[1] For purposes of Pierce's sentencing, we refer to the law in effect at the time he committed his offenses. RCW 9.94A.345.

[2] The record indicates that the Department has deducted costs of incarceration both from funds Pierce earned in the prison work program and funds he received from outside sources. *Compare* Personal Restraint Pet., Ex. 4 (showing deductions from Pierce's account for COIs and COISs), *with* DEP'T OF CORR. POLICY 200.000, Attach. 3, Deductions, http://www.doc.wa.gov/policies/default.aspx?show=200 (stating that COIs "are deductions taken from gratuity payments" and COISs "are deductions taken from all other types of deposits").

¶5 The Court of Appeals dismissed Pierce's personal restraint petition as frivolous under RAP 16.11(b). Pierce moved for discretionary review, and we granted his motion.[3]

## ANALYSIS

¶6 To grant relief on a personal restraint petition alleging a constitutional claim, we generally require a threshold showing of actual and substantial prejudice. *In re Pers. Restraint of Gentry*, 170 Wn.2d 711, 714, 245 P.3d 766 (2010). For nonconstitutional claims we require a showing that the error " 'constitute[s] a fundamental defect and inherently result[s] in a complete miscarriage of justice.' " *Id.* (quoting *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994)). But when a petition "raises issues that were afforded no previous opportunity for judicial review, . . . the petitioner need not make the threshold showing of actual prejudice or complete miscarriage of justice." *Id.* at 714-15 (citing *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 214, 227 P.3d 285 (2010)). It is enough if the petitioner can demonstrate unlawful restraint under RAP 16.4. *Id.* at 715.

¶7 An inmate is unlawfully restrained if the Department collects funds from the inmate's account illegally. *See In re Pers. Restraint of Sappenfield*, 138 Wn.2d 588, 595, 980 P.2d 1271 (1999). Thus, if Pierce can show that the Department lacks authority to deduct funds from his account, he would meet his burden of proving unlawful restraint under RAP 16.4.

¶8 Pierce's argument relies on the interplay between several statutory provisions. In any question of statutory construction, we look to ascertain the legislature's intention

---

[3] The Washington Association of Criminal Defense Lawyers, the Washington Defender Association, and the American Civil Liberties Union Foundation of Washington (collectively Amici) filed an amici brief in support of Pierce's first point regarding the Department's authority to collect costs of incarceration when the judgment and sentence waives such costs. Amici did not address any of Pierce's other arguments.

by first examining the statute's plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id.* We discern a statute's plain meaning "from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007) (citing *Campbell & Gwinn*, 146 Wn.2d at 9-12). " 'Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.' " *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (internal quotation marks omitted) (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999)). We will not construe a statute in a manner that creates an absurd result. *Id.*

¶9 Given the complexity of the statutory scheme at issue, we begin with a brief explanation of the relevant statutes.

## I. Statutory Scheme

### *Former RCW 9.94A.760*

¶10 Former RCW 9.94A.760 is titled "Legal financial obligations." It allows a superior court to order a person convicted of a crime to pay a "legal financial obligation as part of the sentence." Former RCW 9.94A.760(1). A "legal financial obligation" is defined as "a sum of money that is ordered by a superior court of the state of Washington for legal financial obligations." Former RCW 9.94A.030(27) (2003). It may include "restitution to the victim, statutorily imposed crime victims' compensation fees, . . . court costs, county or interlocal drug funds, court-appointed attorneys' fees, . . . costs of defense, [and] fines." *Id.* A legal financial obligation also includes "any other financial obligation that is assessed to the offender as a result of a felony conviction." *Id.*

¶11 In addition to authorizing the court to order payment of LFOs generally, former RCW 9.94A.760 allows the court to impose a specific financial obligation in the form of costs of incarceration. Subsection (2) of former RCW 9.94A.760 states, "If the court determines that the offender, at the time of sentencing, has the means to pay for the cost of incarceration, the court may require the offender to pay for the cost of incarceration at a rate of fifty dollars per day of incarceration."

¶12 The Department and Amici agree that when a trial court imposes costs of incarceration under former RCW 9.94A.760(2), the costs fall within the broad definition of "legal financial obligation." Costs of incarceration constitute "any . . . financial obligation" and, when imposed as part of a sentence, they are "assessed to the offender as a result of a felony conviction." Former RCW 9.94A.030(27). Thus, when a trial court orders payment of costs of incarceration in the judgment and sentence, such costs are included in the inmate's LFOs along with any other court-ordered costs, assessments, or restitution.

¶13 Because LFOs may consist of several different types of financial obligations, former RCW 9.94A.760 establishes a priority for paying off the various obligations. Any funds received from the inmate go first toward paying restitution. Former RCW 9.94A.760(1). Once restitution is satisfied, the Department directs all payments toward the remaining LFOs. *Id.* Costs of incarceration receive the last priority. Former RCW 9.94A.760(2).

*RCW 72.09.110*

¶14 Chapter 72.09 RCW is the chapter governing the Department. The first relevant statute under this chapter, RCW 72.09.110, was enacted as part of the Corrections Reform Act of 1981 (CRA). Laws of 1981, ch. 136, § 12. In the run up to the passage of the CRA "[w]ork opportunities for inmates [were] few[,] and idleness [was] common." H.B. Rep. on Second Substitute H.B. 235, 47th Leg., Reg. Sess. (Wash.

1981). The CRA sought to overhaul prison work programs by directing the Department to create institutional industries that would provide greater work opportunities for inmates. RCW 72.09.110 describes the inmates' role in supporting the new institutional industries. It states that "[a]ll inmates working in prison industries shall participate in the cost of corrections, including costs to develop and implement correctional industries programs, by means of deductions from their gross wages." RCW 72.09.110.

*RCW 72.09.111*

¶15 RCW 72.09.111 outlines various formulas the Department must use in deducting from inmate wages earned in the institutional work program. The deduction formula varies depending on the industry in which the inmate is employed.[4] For example, minimum deductions from class I gross wages must include:

(i) Five percent to the crime victims' compensation account provided in RCW 7.68.045;

(ii) Ten percent to a department personal inmate savings account;

(iii) Twenty percent to the department to contribute to the cost of incarceration; [and]

(iv) Twenty percent for payment of legal financial obligations for all inmates who have legal financial obligations owing in any Washington state superior court.

RCW 72.09.111(1)(a).

¶16 The deduction formula is different for earnings in other industries, but in nearly every circumstance the

---

[4] The institutional work program includes five classes of industries. RCW 72.09.100(1)-(5). Class I (free venture industries) consists of profit and nonprofit organizations, class II (tax reduction industries) consists of state-owned and operated enterprises, class III (institutional support industries) consists of industries operated by the Department, class IV (community work industries) consists of industries also operated by the Department, and class V (community restitution programs) consists of government or nonprofit industries that employ offenders on community supervision. *Id.*

statute directs the Department to collect costs of incarceration. RCW 72.09.111(1)(b)-(e). The statute also provides that "[a]ll funds deducted from inmate wages . . . for the purpose of contributions to the cost of incarceration shall be . . . used only for the purpose of enhancing and maintaining correctional industries work programs." RCW 72.09.111(7).

*RCW 72.09.480*

¶17 While RCW 72.09.111 authorizes deductions from funds an inmate earns through the institutional work program, RCW 72.09.480 directs the Department to make deductions from any funds the inmate receives from other sources. It states:

> When an inmate . . . receives any funds in addition to his or her wages or gratuities . . . the additional funds shall be subject to the following deductions and the priorities established in chapter 72.11 RCW:[5]
>
> (a) Five percent to the crime victims' compensation account provided in RCW 7.68.045;
>
> (b) Ten percent to a department personal inmate savings account;
>
> (c) Twenty percent for payment of legal financial obligations for all inmates who have legal financial obligations owing in any Washington state superior court;
>
> (d) Twenty percent for any child support owed under a support order; [and]
>
> (e) Twenty percent to the department to contribute to the cost of incarceration.

RCW 72.09.480(2). Unlike RCW 72.09.111, RCW 72.09.480 contains only one deduction formula. This is so because deductions under RCW 72.09.480 derive from outside sources, not inmate wages or the particular industry in which the inmate works.

---

[5] RCW 72.11.030(1) provides that "all court-ordered legal financial obligations shall take priority over any other statutorily imposed mandatory withdrawals from inmate's accounts."

¶18 RCW 72.09.480 is an outgrowth of RCW 72.09.111. The legislature enacted RCW 72.09.480 two years after RCW 72.09.111 based on a finding that

> the increasing number of inmates incarcerated in state correctional institutions, and the expenses associated with their incarceration, require expanded efforts to contain corrections costs. Cost containment requires improved planning and oversight, and increased accountability and responsibility on the part of inmates and the department.

Laws of 1995, 1st Spec. Sess., ch. 19, §§ 1, 8.

¶19 RCW 72.09.480 had the effect of expanding the Department's authority to deduct funds from an inmate's account. Originally, RCW 72.09.480 mandated deductions simply by referring to the deduction formula in RCW 72.09.111. Former RCW 72.09.480 (1995) ("When an inmate receives any funds in addition to his or her wages or gratuities, the additional funds shall be subject to the deductions in RCW 72.09.111(1)(a) . . . ."). The legislature later eliminated the reference to RCW 72.09.111 and gave RCW 72.09.480 its own deduction formula. Laws of 2003, ch. 271, § 3.[6]

¶20 In the years following enactment of RCW 72.09.480, concerns arose that the statute would allow the Department to deduct more than the actual cost of keeping an inmate confined. S.B. Rep. on S.B. 5283, 55th Leg., Reg. Sess. (Wash. 1997). In 1997, the legislature added a provision to RCW 72.09.480 clarifying that "[t]he amount deducted from an inmate's funds . . . shall not exceed the department's total cost of incarceration for the inmate incurred during the inmate's minimum or actual term of confinement, whichever is longer." Laws of 1997, ch. 165, § 1(3).

---

[6] While Pierce's personal restraint petition was pending before this court, the legislature amended both RCW 72.09.111 and RCW 72.09.480 to include an additional deduction for "civil judgment[s] for assault." Laws of 2011, ch. 282, § 1(3). The amendments were effective July 22, 2011.

II.  The Department Has Independent Statutory Authority To Collect Costs of Incarceration

¶21  Pierce and Amici argue that the plain language of these statutes prevents the Department from collecting costs of incarceration under chapter 72.09 RCW when the trial court waives costs of incarceration in the judgment and sentence under former RCW 9.94A.760(2). The Department responds by arguing that its authority to collect costs of incarceration under chapter 72.09 RCW is independent of the judgment and sentence.

¶22  To decide whether the Department has independent statutory authority to collect costs of incarceration, we begin with the language of the various provisions governing the Department under chapter 72.09 RCW. RCW 72.09.110 authorizes the Department to collect "cost[s] of corrections" from inmates to support the institutional work program. RCW 72.09.111 outlines the deductions the Department must make from inmate wages and gratuities, including a specific deduction for "cost[s] of incarceration." RCW 72.09.111(1)(a)(iii). RCW 72.09.480 provides a formula for deducting from inmate funds received from other sources and, like RCW 72.09.111, requires a specific deduction for "cost[s] of incarceration." RCW 72.09.480(2)(e).

¶23  Importantly, the costs of incarceration the Department collects under RCW 72.09.111 and RCW 72-.09.480 are separate from any costs of incarceration ordered in the judgment and sentence under former RCW 9.94A-.760(2). Both deduction statutes require the Department to collect funds from an inmate's account "to contribute to the cost of incarceration." RCW 72.09.111(1)(a)(iii); RCW 72.09.480(2)(e). Yet these "cost[s] of incarceration" are not considered court-ordered costs. We know this because in addition to requiring the Department to deduct costs of incarceration, both RCW 72.09.111 and RCW 72.09.480 require a separate deduction for LFOs—i.e., those costs that *are* court ordered. *See* former RCW 9.94A.030(27)

(defining LFOs as "any . . . financial obligation that is assessed to the offender as a result of a felony conviction"). The fact that the statutes require separate deductions—one for court-ordered costs in the form of LFOs and another for costs of incarceration—indicates that the Department has authority to deduct costs of incarceration even when they are not ordered in the judgment and sentence.

¶24 The history of the CRA confirms that the Department has statutory authority to collect costs of incarceration independently of former RCW 9.94A.760(2). The CRA ushered in the development of new institutional work programs that emphasized inmate participation and responsibility. Former RCW 72.09.110 (1981) provided that "[a]ll inmates working in prison industries shall participate in the cost of corrections." The statute directed the secretary of the Department to "develop a formula which [could] be used to determine the extent to which the wages of these inmates [would] be deducted for this purpose." Former RCW 72.09.110.

¶25 These provisions authorized the Department to support the development of the new institutional work programs by deducting costs of incarceration from inmates' accounts. H.B. Rep. on S.B. 5111, at 1, 52d Leg., Reg. Sess. (Wash. 1991). Even before the legislature added the cost-of-incarceration provision to former RCW 9.94A.760 in 1991, which allowed the trial court for the first time to order payment of costs of incarceration as a component of an inmate's LFOs, the Department was deducting 15 percent from inmate wages to pay for costs of incarceration. *See* H.B. Rep. on S.B. 5111, at 1. Given that the Department's authority to collect costs of incarceration predates enactment of former RCW 9.94A.760(2), we must conclude that the Department can independently collect costs of incarceration.

¶26 The Department's authority to collect non-court-ordered costs of incarceration exists under both RCW 72.09.111 and RCW 72.09.480. The legislature enacted

RCW 72.09.480 to broaden the Department's collection authority in the wake of an escalating prison population and run-away costs. As noted above, RCW 72.09.480 originally authorized deductions on the same exact terms as RCW 72.09.111. The legislature later provided a specific deduction formula for RCW 72.09.480(2) that states, "When an inmate . . . receives any funds in addition to his or her wages or gratuities . . . the additional funds *shall be subject to the following deductions* . . . ." (Emphasis added.) We are satisfied that, with this language, the legislature intended to grant authority to the Department to make deductions under RCW 72.09.480, just as it did under RCW 72.09.111.

¶27 Pierce and Amici read the deduction statutes to authorize the Department to collect only LFOs. In other words, they contend that the phrase "cost[s] of incarceration" in RCW 72.09.111 and RCW 72.09.480 refers only to those costs that are court ordered in the judgment and sentence.

¶28 This argument runs contrary to the plain language of the statutes and would result in surplusage. Both RCW 72.09.111 and RCW 72.09.480 plainly require separate deductions for LFOs and costs of incarceration. RCW 72.09.480(2)(c) and (e), for example, require a 20 percent deduction for LFOs and a separate 20 percent deduction for costs of incarceration. If the Department could collect only those costs of incarceration that the court orders—i.e., those costs that constitute LFOs—then there would be no reason for the statutes to contain a discrete reference for "costs of incarceration." Pierce and Amici's argument essentially reads this phrase out of the statutes.

¶29 Amici contend that treating the deduction for LFOs and the deduction for costs of incarceration separately creates the absurd result of allowing the Department to deduct costs of incarceration twice from an inmate's account. The Department agrees that RCW 72.09.111 and RCW 72.09.480 require a duplicative deduction when the trial court orders costs of incarceration as part of an

inmate's LFOs. In that circumstance, the Department would deduct costs of incarceration both as an LFO and as an independent deduction. Yet the Department maintains that this is simply a function of applying the statutes.

¶30 Assuming the Department deducts funds from an inmate's account in this fashion, we see no absurd result. The most significant concern presented by this situation—that the Department will deduct more than it actually costs to maintain the inmate incarcerated—can never materialize under the statutes. RCW 72.09.480(5) provides that "[t]he amount deducted from an inmate's funds . . . shall not exceed the department's total cost of incarceration for the inmate incurred during the inmate's minimum or actual term of confinement, whichever is longer."[7] Under no circumstances may the Department deduct costs of incarceration beyond the actual costs required to maintain an inmate in confinement.[8]

¶31 Pierce and Amici also argue that allowing the Department to collect costs of incarceration when the trial court has waived such costs under former RCW 9.94A-.760(2) violates the separation of powers doctrine. This argument proceeds from the mistaken premise that the Department's collection efforts modify the judgment and sentence whenever the trial court waives costs of incarceration. In fact, the Department's deductions under chapter 72.09 RCW do not implicate the judgment and sentence. When a trial court waives costs of incarceration, it does so only under former RCW 9.94A.760(2). Waiving costs of incarceration as a component of an inmate's LFOs has no bearing on the Department's authority to independently collect non-court-ordered costs of incarceration. Because

---

[7] While this provision appears in RCW 72.09.480, it applies with equal force to deductions under RCW 72.09.111.

[8] The Department's authority to collect costs of incarceration under RCW 72.09.111 and RCW 72.09.480 ends when the inmate is released from confinement. However, if the court orders costs of incarceration as part of the inmate's LFOs under former RCW 9.94A.760(2), the inmate must continue paying costs of incarceration until the obligation is satisfied.

the legislature has granted the Department authority to collect non-court-ordered costs of incarceration under chapter 72.09 RCW, there is no separation of powers issue.

¶32 Allowing the Department to independently collect costs of incarceration furthers the sound policy expressed in the CRA: "All citizens, the public and inmates alike, have a personal and fiscal obligation in the corrections system." RCW 72.09.010(5)(e). This policy is carried forward by the directive in RCW 72.09.110 that "[a]ll inmates working in prison industries shall participate in the cost of corrections." RCW 72.09.111 and RCW 72.09.480 likewise provide that the Department "shall" deduct funds from an inmate's account to pay for costs of incarceration.

¶33 If Pierce and Amici's interpretation of the statutes prevailed, no inmate would contribute to the corrections system unless the trial court ordered costs of incarceration in the judgment and sentence based on the offender's ability to pay at the time of sentencing. Inmates who became able to pay through participation in the institutional work program or from receiving outside funds would escape their "fiscal obligation in the corrections system." RCW 72.09.010(5)(e). The legislature intended that inmates contribute to their costs of corrections, and we refuse to interpret the statutes in a way that frustrates this intent.

¶34 We hold that the Department may collect costs of incarceration under RCW 72.09.111 and RCW 72.09.480 regardless of the trial court's waiver of costs of incarceration under former RCW 9.94A.760(2).

III. The Department May Deduct Legal Financial Obligations While Pierce Is Confined

¶35 Pierce also contends that the Department may not deduct LFOs from his account until he is released from confinement. He points to language in his judgment and sentence stating that his LFOs are to be paid on a schedule established by his community corrections officer. Pierce argues that, because he will not have a community correc-

tions officer until he is released, no payment schedule may be set for collection of his LFOs while he is confined.

¶36 The Court of Appeals addressed this argument in *In re Personal Restraint of Martin*, 129 Wn. App. 135, 118 P.3d 387 (2005). Like Pierce, Martin asserted that the Department could not deduct LFOs while he was confined because his judgment and sentence ordered payment " '[o]n a schedule established by the defendant's Community Corrections Officer.' " *Id.* at 137-38 (alteration in original). The court rejected this argument relying on RCW 9.94A.772, which provides in relevant part:

> "Notwithstanding any other provision of state law, monthly payment or starting dates set by the court, the county clerk, or the department before or after October 1, 2003, shall not be construed as a limitation on the due date or amount of legal financial obligations, which may be immediately collected by civil means."

*Id.* at 140 (quoting RCW 9.94A.772). The court held that RCW 9.94A.772 unambiguously "allow[s] for collection of legal financial obligations during incarceration despite language in a defendant's judgment and sentence that would direct otherwise." *Id.*

¶37 While the Court of Appeals in *Martin* resolved this issue under RCW 9.94A.772, we agree with the Department that Pierce's judgment and sentence does not purport to set a start date for payment of his LFOs. We read the reference to a payment schedule in the judgment and sentence as addressing payment of any *remaining* LFOs upon Pierce's release. Because the trial court has no way of knowing the amount of LFOs that will remain upon an inmate's release, it makes sense to defer to the corrections officer to set the payment schedule. But this does not mean the judgment and sentence prevents the Department from collecting LFOs before that time. In any case, to the extent the language in Pierce's judgment and sentence could be construed as delaying the due date on his LFOs, we agree

with the Court of Appeals that RCW 9.94A.772 forecloses that option.

¶38 Pierce also argues that the Department may not deduct LFOs because the community custody tolling statute, former RCW 9.94A.545 (2003), tolls his payment obligations while he is confined. This argument also fails. Former RCW 9.94A.545 states that while an offender is in confinement "the *period* of community custody shall toll." (Emphasis added.) Nothing in former RCW 9.94A.545 or the general tolling statute, former RCW 9.94A.625(3) (2000), suggests that an offender's payment obligations are likewise tolled during confinement. We therefore hold that the Department may deduct LFOs from Pierce's account while he is in confinement.

IV. The Department Need Not Issue a Notice of Payroll Deduction Prior to Deducting LFOs from Pierce's Account

¶39 As a final argument, Pierce contends that the Department may not deduct LFOs from his account unless it first issues a notice of payroll deduction under RCW 9.94A.7602 and former RCW 9.94A.760. Both statutes allow the Department to issue a notice of payroll deduction to the employer of an offender while the offender is under Department supervision. *See* RCW 9.94A.7602(1)-(2) and former RCW 9.94A.760(3). The notice of payroll deduction requires employers to withhold a percentage of the offender's earnings to satisfy unmet LFOs. RCW 9.94A.7604(2).

¶40 Contrary to Pierce's view, the Department is not required to issue a notice of payroll deduction to collect LFOs in this instance. RCW 9.94A.7602 and former RCW 9.94A.760(3) contemplate a collection mechanism that the Department may use against offenders who are employed in the community but remain subject to Department supervision. Before an inmate is released, however, both RCW 72.09.111 and RCW 72.09.480 require the Department to deduct LFOs. And neither statute mentions the issuance of

a notice of payroll deduction as a prerequisite to making deductions from an inmate's account.

¶41 Further, the legislature has designated the secretary of the Department as the custodian of all inmate funds acquired during the inmate's period of confinement. RCW 72.11.020. As custodian, "the secretary shall have authority to disburse money from [an inmate's] personal account for the purposes of satisfying a court-ordered legal financial obligation to the court." *Id.* Pierce's interpretation would create the absurd result of tying the Department's hands unless it gave *itself* authorization to make deductions from an inmate's account. We decline to endorse Pierce's strained reading of the statutes, and we hold that the Department need not issue a notice of payroll deduction prior to deducting LFOs from a confined inmate's account.

## CONCLUSION

¶42 The Department has independent statutory authority to collect costs of incarceration regardless of the trial court's waiver of costs of incarceration in the judgment and sentence.

¶43 In addition, the Department may collect LFOs during an inmate's confinement. Language in a judgment and sentence providing for a payment schedule set by a community corrections officer does not halt the Department's collection efforts during the period of confinement. Similarly, an inmate's payment obligations are not tolled while the inmate is confined. Nor must the Department issue a notice of payroll deduction before deducting LFOs from a confined inmate's account.

¶44 Because the Department has authority to deduct costs of incarceration and LFOs from Pierce's account, Pierce has not met his burden of showing unlawful re-

straint under RAP 16.4. We therefore dismiss his personal restraint petition.

MADSEN, C.J., and CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and WIGGINS, JJ., concur.

¶45 ALEXANDER, J. (dissenting) — I disagree with the result the majority reaches insofar as the 2006 judgment and sentence is concerned. I do so because the Department of Corrections' (DOC) deduction of costs of incarceration from Chad Pierce's inmate trust account violates a provision in that judgment and sentence waiving costs of incarceration.

¶46 DOC contends that notwithstanding the sentencing judge's waiver of costs of incarceration, it has authority to make such deductions, and the majority has indicated its agreement with this contention. In my view, DOC and the majority are both incorrect. I say that because there is no statute authorizing DOC to overrule an order of the sentencing superior court waiving costs of incarceration. Significantly, the superior court has authority to impose payment of legal financial obligations (LFOs) if, at the time of sentencing, it determines that the defendant "has the means to pay" these costs. RCW 9.94A.760(2). Costs of incarceration are an LFO under a catchall provision in former RCW 9.94A.030(28) (2006) and DOC has authority to collect court ordered LFOs. RCW 72.09.480(2). Because DOC may collect obligations imposed by the superior court, there appears to be no justification for DOC to make deductions for LFOs in its judgment and sentence when the sentencing court has waived such payments. To hold that DOC possesses the authority to collect costs that are waived, as the majority does, is to countenance contravention of a lawful order of the superior court.

¶47 The majority relies primarily on RCW 72.09.111 and RCW 72.09.480 as the basis for "expanding the Depart-

ment's authority to deduct funds from an inmate's account." Majority at 382. While these statutes permit DOC to make deductions from inmate accounts for "inmates who have [LFOs] owing in any Washington state superior court" (RCW 72.09.111(1)(a)(iv)), there is nothing in those statutes granting DOC authority to impose costs of incarceration when those costs were specifically waived by the superior court. Here, the 2006 judgment and sentence specifically provides that costs of incarceration are not owing.

¶48 In sum, if a sentencing court determines that a defendant is without such means and, therefore, should not have to pay costs of incarceration, efforts by the State to contravene that order are unlawful and void as a violation of separation of powers.

¶49 Because the majority errs in concluding that DOC may deduct costs of incarceration from Chad Pierce's inmate trust account, notwithstanding the sentencing court's order waiving these costs, I dissent.

C. JOHNSON, J., concurs with ALEXANDER, J.

Reconsideration denied February 16, 2012.