[No. 29916-3-III. Division Three. March 25, 2014.]

THE STATE OF WASHINGTON, *Respondent*, v. CHAD EDWARD DUNCAN, *Appellant*.

246

*Susan M. Gasch* (of *Gasch Law Office*), for appellant.

*James P. Hagarty, Prosecuting Attorney*, and *David B. Trefry, Deputy*, for respondent.

¶1 SIDDOWAY, J. — Chad Duncan appeals his conviction of six counts of assault, each subject to a firearm enhancement, and unlawful possession of a firearm. He assigns error to the trial court's denial of his motion to suppress evidence of a handgun and shell casings found in his car at the time of his arrest and to the trial court's finding that he had the current or future ability to pay legal financial obligations (LFOs). He also assigns error to the trial court's sentence of community custody, which the State concedes was unsupported. He alleges additional errors in a pro se statement of additional grounds.

¶2 In the published portion of this opinion, we address his challenge to the trial court's finding that he had the current or future ability to pay LFOs. Because a sentencing court will seldom find that there is no likelihood that an offender will ever be able to pay LFOs and an offender has good strategic reasons for waiving the issue at the sentencing hearing, we will not consider the issue for the first time on appeal.

¶3 In the unpublished remainder of the opinion, we accept the State's concession that the court lacked authority to impose a term of community custody for Mr. Duncan's conviction of unlawful possession of a firearm but find no other error. We affirm Mr. Duncan's conviction and remand the matter to the trial court solely for the purpose of striking the term of community custody.

## FACTS RELEVANT TO IMPOSITION OF DISCRETIONARY LFOS

¶4 Mr. Duncan was charged with six counts of assault and one count of unlawful possession of a firearm and was found guilty following a jury trial in March 2011.

¶5 At the time of sentencing, the proposed judgment and sentence prepared by the State and presented to the court included the following restitution, costs, and assessments, some of which are mandated by statute and others of which are discretionary:

| | |
|---|---|
| $1,235.54 | Restitution |
| $500.00 | Crime penalty assessment |
| $200.00 | Criminal filing fee |
| $600.00 | Court appointed attorney recoupment |
| $100.00 | DNA (deoxyribonucleic acid) collection fee |
| $20.00 | Sheriff service fee |
| $250.00 | Jury fee |

Clerk's Papers (CP) at 181.

¶6 Boilerplate findings within the judgment and sentence that was completed and entered by the court included a finding that Mr. Duncan had the present or future ability to pay the financial obligations imposed. They also included findings that Mr. Duncan had the means to pay for the costs of incarceration (not to exceed certain maximum amounts) and the means to pay any costs of medical care incurred by the county.

¶7 The parties' presentations at the sentencing hearing dealt primarily with whether the court should impose a sentence at the high or low end of the standard range, with whether the sentences on the six assaults should run consecutively, and with Mr. Duncan's mother's plea for lenient sentencing. Neither party made any presentation of evidence or argument directly addressing Mr. Duncan's ability to pay. The only fact addressed that had a bearing, indirectly, on his ability to pay was the lengthy sentence

(effectively a life sentence) being imposed by the court. In reviewing the judgment and sentence with the parties, the court observed, "He has $2905 and some change to pay if he's released," and that "[c]ost of incarceration, cost of medical care will be imposed." Report of Proceedings at 992. Mr. Duncan did not object to the costs imposed or to the court's findings.

## ANALYSIS OF LFO ISSUE

¶8 For the first time on appeal, Mr. Duncan contends that the record does not support the trial court's findings that he has the current or future ability to pay discretionary LFOs, including incarceration and medical costs. *See In re Pers. Restraint of Pierce*, 173 Wn.2d 372, 379, 268 P.3d 907 (2011) (holding that "costs of incarceration" imposed by RCW 9.94A.760(2) fall within the broad definition of "legal financial obligation"); RCW 70.48.130(4) (authorizing sentencing courts to order offenders to repay all or part of medical costs incurred during confinement as part of a judgment and sentence). He asks that we remand his judgment and sentence to the trial court with instructions to strike the objectionable findings as was done in *State v. Bertrand*, 165 Wn. App. 393, 267 P.3d 511 (2011).

¶9 The convergence of three factors has contributed to the recurrent raising in appeals of this and other challenges to discretionary LFOs imposed by trial courts.

¶10 First is a statutory requirement that trial courts take some account of a defendant's ability to pay the obligations in the future. RCW 10.01.160(3) provides that a trial court "shall not order a defendant to pay costs unless the defendant is or will be able to pay them." RCW 9.94A.760(2) provides that the trial court may require an offender to pay costs of incarceration "[i]f the court determines that the offender, at the time of sentencing, has the means to pay." No formal or specific findings of ability to pay are required to be made by the trial court. *State v. Curry*, 118 Wn.2d 911,

916, 829 P.2d 166 (1992). Still, RCW 10.01.160(3) provides that "the court shall *take account* of the financial resources of the defendant and the nature of the burden that payment of costs will impose." (Emphasis added.) *Curry* observes that while not required to make findings, "[t]he court is directed to *consider* ability to pay." 118 Wn.2d at 916 (emphasis added).

 ¶11 Second is the apparent and unsurprising fact that many defendants do not make an effort at sentencing to suggest to the sentencing court that they are, and will remain, unproductive. "The State's burden for establishing whether a defendant has the present or likely future ability to pay discretionary legal financial obligations is a low one." *State v. Lundy*, 176 Wn. App. 96, 106, 308 P.3d 755 (2013). As *Lundy* observes, it has been deemed met by a single reference in a presentence report to the defendant describing himself as " 'employable.' " *Id.* (internal quotation marks omitted) (quoting *State v. Baldwin*, 63 Wn. App. 303, 311, 818 P.2d 1116, 837 P.2d 646 (1991)). Indeed, "a trial court is prohibited from imposing legal financial obligations only when it appears from the record that there is no likelihood that the defendant's indigency will end." *Id.* at 99. Sentencing is a context in which most defendants are motivated to portray themselves in a more positive light.

██ ¶12 Not only is it unhelpful for a defendant to portray himself or herself as irretrievably indigent at the time of sentencing, a defendant who will truly never be able to pay is not left without protection from collection or punishment. After costs are imposed, a defendant who is not in contumacious default may petition the sentencing court for remission of the payment of all or part of them. RCW 10.01.160(4). Due process precludes the jailing of an offender for failure to pay a fine if the offender's failure to pay was due to his or her indigence; while the burden is on the offender to show that his nonpayment is not willful, "due process still imposes a duty on the court to inquire into the offender's ability to pay . . . at 'the point of collection and

when sanctions are sought for nonpayment.'" *State v. Nason*, 168 Wn.2d 936, 945, 233 P.3d 848 (2010) (quoting *State v. Blank*, 131 Wn.2d 230, 242, 930 P.2d 1213 (1997)). Given more important issues at stake in a sentencing hearing, many defendants will consciously and prudently choose not to argue at the time of sentencing that they will be perpetually unemployed and indigent.

¶13 The third converging factor is boilerplate findings included in some uniform judgment and sentence forms, which, under CrR 7.2(d), are to be prescribed by the Administrator for the Courts in conjunction with the Supreme Court Pattern Forms Committee. Although perhaps no longer the case,[1] judgment and sentence forms have often included boilerplate findings of ability to pay. We have been presented in many appeals with such boilerplate findings that bear no relation to any evidence or argument presented to the sentencing judge. The boilerplate findings in Mr. Duncan's judgment and sentence to which he objects are:

> **2.7 Financial Ability:** The Court has considered the total amount owing, the defendant's past, present, and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The Court finds that the defendant has the present ability or likely future ability to pay the financial obligations imposed herein. RCW 9.94A.753.
>
> . . . .
>
> **4.D.4 Costs of Incarceration:** In addition to the above costs, the court finds that the defendant has the means to pay for the costs of incarceration, in prison at a rate of $50.00 per day of incarceration or in the Yakima County Jail at the actual rate of incarceration but not to exceed $100.00 per day of incarceration (the rate in 2011 is $79.75 per day), and orders the defendant to pay such costs at the statutory rate as assessed by the Clerk. Such costs are payable only after restitution costs, assessments and fines listed above are paid. RCW 9.94A.760(2).

---

[1] *See, e.g.*, WPF CR.84.0400P (rev. July 2013) (a felony judgment form), *available at* http://www.courts.wa.gov/forms.

**4.D.5 Costs of Medical Care:** In addition to the above costs, the court finds that the defendant has the means to pay for any costs of medical care incurred by Yakima County on behalf of the defendant, and orders the defendant to pay such medical costs as assessed by the Clerk. Such costs are payable only after restitution costs, assessments and fines listed above are paid. RCW 70.48.130.

CP at 179-81.

¶14 The result of these three converging factors are boilerplate findings frequently contained in a judgment and sentence that are often unsupported by the record and that may well have been supported if addressed at sentencing, but that the defendant had no inclination to object to or challenge at that time.

■ ■ ¶15 In *State v. Kuster*, 175 Wn. App. 420, 425, 306 P.3d 1022 (2013), we relied on RAP 2.5(a) to decline to address a challenge to a boilerplate finding of ability to pay LFOs raised for the first time on appeal. Other divisions of the Court of Appeals have taken the same position. *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *review granted*, 178 Wn.2d 1010, 311 P.3d 27 (2013); *State v. Calvin*, 176 Wn. App. 1, 316 P.3d 496, *petition for review filed*, No. 89518-0 (Wash. Nov. 12, 2013). *Bertrand*, which is relied on by Mr. Duncan, involved distinguishable facts: a record from which it affirmatively appeared that the defendant was disabled and was (and would likely remain) indigent, as pointed out in *Lundy*, 176 Wn. App. at 106. Mr. Duncan presents the more typical situation of a record that does not support a finding that he is indigent with no likelihood that his indigency will end.

¶16 In other cases, we have often taken our cue from the State's response to this issue—and the State's response has varied among the county prosecutors in our division. Taking our cue from the State, we have sometimes ordered that a finding of ability to pay be stricken if not supported by the record. Other times, we have remanded for a hearing on ability to pay. We have sometimes accepted the argument

that an order to pay LFOs (unlike a finding of ability to pay) is not ripe for review before an attempt is made to enforce it. Sometimes, as in *Kuster*, we have refused to consider the challenge, citing RAP 2.5(a).

¶17 Here, the State suggests that we remand for a hearing on ability to pay. But having come to the conclusion that ability to pay LFOs is not an issue that defendants overlook—it is one that they reasonably waive—we view this as precisely the sort of issue we should decline to consider for the first time on appeal. We may decline to address an argument under RAP 2.5(a) sua sponte. *State v. Kirkpatrick*, 160 Wn.2d 873, 880 n.10, 161 P.3d 990 (2007), *overruled on other grounds by State v. Jasper*, 174 Wn.2d 96, 271 P.3d 876 (2012). If a trial court fails to consider ability to pay or enters an unsupported finding, it is not constitutional error. *Calvin*, 176 Wn. App. at 24-25 (citing *Blank*, 131 Wn.2d at 241-42).

¶18 We are aware that in *Blazina*, which, along with *State v. Paige-Colter*, noted at 175 Wn. App. 1010, 2013 WL 2444604, 2013 Wash App. LEXIS 1325, *review granted*, 178 Wn.2d 1018, 312 P.3d 650 (2013), has been argued and is presently awaiting decision by the Supreme Court,[2] the defense has argued that entry of unsupported findings on ability to pay falls within the non-rule-based exception to RAP 2.5(a) for sentences in excess of a trial court's statutory authority. *See, e.g., State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999); *State v. Mendoza*, 165 Wn.2d 913, 920, 205 P.3d 113 (2009). We are not deterred from refusing to entertain the issue for the first time on appeal for several reasons.

¶19 In *Mendoza*, the Supreme Court spoke of "belated challenges to criminal history relied upon by a sentencing court" as an exception to what it characterized as Washington appellate courts' "*general reluctance* to address issues not preserved in the trial court," thereby affirming that we

---

[2] Supreme Court cause numbers 89028-5 and 89109-5 (argued February 11, 2014).

will generally not review belated challenges. 165 Wn.2d at 919-20 (emphasis added). We must critically examine whether, if the trial court did fail to comply with RCW 10.01.160(3), it is a sentencing error that should be recognized as a common law exception to RAP 2.5(a).

¶20 The Supreme Court has recognized shortcomings in the State's proof of a defendant's criminal history as an exception, but its reasoning in doing so does not apply to every error that might be made at sentencing. In *State v. Hunley*, the court reasoned that because the State has the burden to prove prior convictions at sentencing by a preponderance of the evidence, then a failure of proof by the State (even if not raised at trial) raises due process concerns—"because it is 'inconsistent with the principles underlying our system of justice to sentence a person on the basis of crimes that the State either could not or chose not to prove.'" 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012) (citing *Ford*, 137 Wn.2d at 479-80 and quoting *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 357, 759 P.2d 436 (1988)); *State v. McCorkle*, 137 Wn.2d 490, 495, 973 P.2d 461 (1999) ("Our holding in *Ford* was directly controlled by the clear burden of proof placed on the State by the [Sentencing Reform Act of 1981, ch. 9.94A RCW]."). By contrast, RCW 10.01.160(3) and RCW 9.94A.760(2) provide that the court is to take account of present or future ability to pay at the time of sentencing but without imposing a burden of proof on the State at that time.

¶21 In *State v. Moen*, 129 Wn.2d 535, 919 P.2d 69 (1996), the Supreme Court offered different reasoning for recognizing an exception for a defendant's failure to raise a timely objection to a sentencing error in the trial court, but reasoning that, again, does not apply here. At issue in *Moen* was a restitution order imposed after the deadline for entering a restitution order had passed. The court reasoned that an exception should be made to RAP 2.5(a) because (1) allowing a belated challenge would bring the defendant's sentence into compliance with sentencing statutes and (2)

the challenge presented no risk that the defendant had engaged in a strategic waiver to the detriment of other parties and the court. Recognizing that a defendant's failure to object to a late order presents no potential for abuse, it held that "[t]his sort of 'correction' of an error does not fall sufficiently within the purpose of the rule"—which it described elsewhere as being to apprise the trial court of the claimed error at a time when it can correct it—"to justify requiring an objection as a prerequisite to appellate review." *Id.* at 547. In the case of LFOs, there is clear potential for abuse, since a defendant might well defer rather than raise a claim of permanent indigency at the time of sentencing, if he or she thought it could be successfully raised for the first time on appeal.

¶22 The Supreme Court may clarify this issue in *Blazina* and *Paige-Colter*, but for now we do not understand the reasoning and holdings of *Moen, Ford,* and later cases as requiring that we entertain challenges to LFOs and supporting findings that were never raised in the trial court.

¶23 In the unusual case of an irretrievably indigent defendant whose lawyer fails to address his or her inability to pay LFOs at sentencing and who is actually prejudiced, a claim of ineffective assistance of counsel is an available course for redress.

¶24 We decline to address the issue for the first time on appeal. We affirm Mr. Duncan's conviction and remand the matter to the trial court solely for the purpose of striking the term of community custody for reasons discussed hereafter.

¶25 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

KORSMO, C.J., and BROWN, J., concur.

Petition for review filed April 24, 2014.