**FILED**
**JUNE 2, 2015**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30713-1-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 31717-0-III) |
| v. | ) | |
| | ) | |
| JORGE ALEXANDER CAMACHO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |
| In the Matter of the Personal Restraint of: | ) | |
| | ) | |
| JORGE ALEXANDER CAMACHO, | ) | |
| | ) | |
| Petitioner. | ) | |

KORSMO, J. — Jorge Camacho challenges his convictions for first degree burglary and fourth degree assault, both domestic violence offenses, by appeal and personal restraint petition. We affirm the convictions and dismiss the petition.

FACTS

The facts of the underlying offenses need not be discussed at any length due to the issues presented. Mr. Camacho was charged after an incident occurring October 16-17, 2010, involving his former girlfriend, A.T. He allegedly entered into her house without

permission and assaulted her with a gun. The matter proceeded to jury trial some 18 months after charges were filed.

A jury returned guilty verdicts on the charge of first degree burglary and the lesser degree offense of fourth degree assault. Despite noting the presence of two aggravating factors, the trial court imposed a standard range sentence on the burglary count. Mr. Camacho timely appealed to this court.

Apparently dissatisfied with the issue presented by his appointed counsel, Mr. Camacho filed a personal restraint petition (PRP) raising numerous issues. Subsequent to the filing of that petition, Mr. Camacho was deported from this country for the third time. The State, providing evidence that Mr. Camacho has been subject to three federal exclusion orders since 2002, argues that the PRP should be dismissed because Mr. Camacho is beyond the authority of our state courts and has not been harmed by his conviction in light of the 2002 exclusion order.

## ANALYSIS

The appeal presents a single issue, while the PRP presents many. Due to the differing standards that govern the two actions, we will address the appeal issue first before turning to the contentions of the PRP.

*Legal Financial Obligations*

The sole issue presented by the appeal is one that has been the subject of much litigation the past few years—whether challenges to the trial court's imposition of legal

2

financial obligations (LFOs) can be presented for the first time on appeal. We discuss it once again because the Washington Supreme Court has recently addressed the topic in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

Prior to the decision in *Blazina*, the three divisions of this court unanimously had concluded that the issue was one that could not be addressed for the first time on appeal. *E.g.*, *State v. Duncan*, 180 Wn. App. 245, 327 P.3d 699 (2014); *State v. Calvin*, 176 Wn. App. 1, 316 P.3d 496 (2013), *petition for review filed*, No. 89518-0 (Wash. Nov. 12, 2013); *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013), *aff'd in part, rev'd in part* 182 Wn.2d 827, 344 P.3d 680 (2015).

In its consideration of the issue in *Blazina*, the Washington Supreme Court agreed that the LFO issue is not one that can be presented for the first time on appeal because this aspect of sentencing is not one that demands uniformity. 182 Wn.2d at 830. To that end, the appellate courts retain discretion whether or not to consider the issue initially on appeal. *Id.* The *Blazina* court then decided to exercise its discretion in favor of accepting review due to the nationwide importance of the general issue reference LFOs and to provide guidance to our trial courts. *Id.* at 830. The court noted that trial judges have a statutory obligation to consider RCW 10.01.160(3) at sentencing and make an individualized determination of the defendant's ability to pay discretionary LFOs. *Id.* at 837.

We exercise our discretion and, following *Duncan*, decline to consider the argument. There is no purpose to directing the trial court to conduct a hearing that it cannot hold. Mr. Camacho is not in the country and cannot legally return. The existing LFO is not the reason for his departure and does not itself constitute an impediment to his return. In the event that he someday is permitted to lawfully be in the country, he is free to seek remission of his LFOs in light of his then current finances. *See* RCW 10.01.160(4).

Accordingly, the conviction is affirmed.

*Personal Restraint Petition*

The PRP raises 13 issues that are without merit.[1] Several are without factual support in the record, many are without adequate legal argument, and all fail to establish prejudice. We will group the claims by the nature of the primary deficiency and summarily address them in that manner.

We begin by noting the petitioner's heavy burdens in this action. Because of the significant societal costs of collateral litigation often brought years after a conviction and the need for finality, relief will only be granted in a PRP if there is constitutional error that caused substantial actual prejudice or if a nonconstitutional error resulted in a fundamental defect constituting a complete miscarriage of justice. *In re Pers. Restraint*

---

[1] A fourteenth issue, cumulative error, is not considered in light of our conclusion that there were no errors to cumulate.

4

*of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005). It is the petitioner's burden to establish this "threshold requirement." *Id.* To do so, a PRP must present competent evidence in support of its claims. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992). If the facts alleged would potentially entitle the petitioner to relief, a reference hearing may be ordered to resolve the factual allegations. *Id.* at 886-87.

Initially, we decline to address the State's argument that the PRP should be dismissed due to Mr. Camacho's deportation from the country. In light of the fact that this court had jurisdiction when the petition was filed and that the issues clearly lack merit, we will address the claims.

*Claims Lacking Factual Basis.* Several of the claims are contrary to the record and we summarily reject them for that reason. Claims lacking any factual support include: (6) alleged failure to give a fourth degree assault instruction (the court did give such an instruction), (7) alleged imposition of an exceptional sentence (the court imposed a standard range sentence), (9) alleged admission of prior acts of domestic violence (the court excluded them), and (11) alleged admission of prior convictions under ER 609 (in fact, the court granted the defense motion in limine on this issue). In each of these instances, the trial court did the opposite of what Mr. Camacho claims happened. These arguments all lack a basis in fact.

5

No. 30713-1-III; No. 31717-0-III
*State v. Camacho*; *In re PRP of Camacho*

*Criminal rule violation claims.* Claims (1) CrR 3.3 and (2) CrR 8.3(b), involve alleged violations of court rules. Mr. Camacho argues that his rule-based time for trial right was violated and that the case should have been dismissed for governmental misconduct. Neither of these claims were presented to the trial court, but are raised initially in this action. We conclude that these claims do not constitute fundamental defects for which relief could be granted in a PRP.

The Washington Supreme Court has repeatedly noted that its "state court rules creates procedural rights." *State v. Templeton*, 148 Wn.2d 193, 212, 59 P.3d 632 (2002). Only the legislature can create substantive rights. *Id.* The rights created by CrR 3.3 are recognized as procedural in nature. *State v. Edwards*, 94 Wn.2d 208, 212, 616 P.2d 620 (1980). In each instance, the court rule right is waived and cannot be considered on appeal if it was not presented to the trial court. *State v. Smith*, 104 Wn.2d 497, 508, 707 P.2d 1306 (1985) (CrR 3.3); *State v. Nowinski*, 124 Wn. App. 617, 630, 102 P.3d 840 (2004) (CrR 8.3(b) theory different from that argued to the trial court).

Because alleged violation of these court-created procedural rights cannot be considered on appeal unless first argued in the trial court, we conclude that they do not constitute a "fundamental defect" for purposes of obtaining relief in a PRP. When a procedural right is waived by nonassertion, it cannot provide a basis for relief on appeal. For that reason, we conclude there is nothing "fundamental" in these alleged defects. They cannot be considered initially in a PRP.

*No Error.* The petition raises five claims that fail to establish any error occurred, let alone significant enough error to justify relief in a PRP. One of those claims is (8) where Mr. Camacho contends that the court erred in permitting a third amendment of the information. However, he makes no argument explaining why this action was error. Similarly, the petition argues (13) that the court erred in failing to grant him a different attorney. However, he fails to establish that counsel was not communicating with him, was incompetent, or any other reason why the attorney needed to be replaced. Thus, we need not consider these claims further.

The remaining issues are fairly articulated, although none have merit. For instance, Mr. Camacho claims (3) that the court erred in allowing his eight-year-old son to testify. However, he bears the burden of establishing that the child was not competent to testify. *State v. S.J.W.*, 170 Wn.2d 92, 102, 239 P.3d 568 (2010). He cannot point to any facts in the record that call the child's competency into question. Our review of the record indicates that the boy testified with full understanding of the need to testify truthfully and nothing in his testimony suggests he was incompetent. Accordingly, the petition fails to establish any error.

Mr. Camacho next argues (4) that the evidence was insufficient to support the first degree burglary conviction because he entered the victim's "house" rather than entering a "building" as required by the first degree burglary statute, RCW 9A.52.020. However, the word "building" is given "its ordinary meaning" in addition to several specialized

definitions, including "any other structure used for lodging of persons." RCW

9A.04.110(5). Under any consideration, a house is a building both in its "ordinary

meaning" as well as constituting a "structure used for lodging of persons." This

argument fails.

In a somewhat related claim that is inconsistent with the preceding argument, the

PRP next (5) contends that the court erred in failing to instruct the jury on the included

offense of second degree burglary. A party is entitled to an instruction on a lesser

included offense if the inferior crime is necessarily proven each time the greater crime is

committed (legal prong) and there is a factual basis for believing that only the lesser

offense was committed (factual prong). *E.g.*, *State v. Berlin*, 133 Wn.2d 541, 545-46,

947 P.2d 700 (1997); *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

Here, there was no factual basis for finding that only second degree burglary

occurred. That crime occurs when, inter alia, a person enters "a building other than . . . a

dwelling." RCW 9A.52.030. A "dwelling," in turn, means "any building . . . or a portion

thereof, which is used or ordinarily used by a person for lodging." RCW 9A.04.110(7).

As his previous argument admitted, the crime occurred in A.T.'s house, which is a

"dwelling" and is excluded from the definition of second degree burglary. The trial court

correctly determined that the evidence did not support an instruction on second degree

burglary. There was no error.

*No Prejudice.* The final two arguments can be summarily rejected because they did not establish any prejudicial error. First, the petition argues (10) that the court erred in failing to strike the firearm enhancement from the first degree assault charge. However, he was acquitted on that charge and no enhancement was returned by the jury. Thus, even if the trial court should have stricken the enhancement, Mr. Camacho suffered no harm because the jury rejected those allegations.

Finally, the petition argues that (12) the court erred in failing to suppress evidence concerning a compact disc (CD) that was supposed to contain two files, but was empty. The defense filed a motion in limine concerning the CD, but never argued it to the trial court when the other defense motions in limine were heard. The record does not explain why the argument was not pursued. Any error may have been corrected before the hearing or perhaps the defense no longer desired to suppress the empty folder. We do not know what happened and the PRP does not explain it.

Thus, it is doubtful that the petition establishes any error. More fundamentally, there is no showing of prejudice from the failure to act on this motion in limine, let alone that a miscarriage of justice occurred.

None of the claims of the PRP had any merit and, thus, all fell far short of meeting the burdens placed on the petition to establish a fundamental defect in the proceedings that caused a miscarriage of justice. The PRP is, therefore, dismissed.

No. 30713-1-III; No. 31717-0-III
*State v. Camacho*; *In re PRP of Camacho*

Appeal affirmed; petition dismissed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

10

30713-1-III consolidated with 31717-0-III

FEARING, J. (concurring) — I concur in the majority's decision to decline review of Jorge Camacho's challenge to legal financial obligations in accordance with the discretion granted appellate courts under *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). Because Camacho is no longer within this nation and may not legally return, review serves no purpose. I write separately because the majority opinion implies that *Blazina* did not undercut this division's rulings in *State v. Duncan*, 180 Wn. App. 245, 327 P.3d 699 (2014), and the majority declares that it follows *Duncan* in declining review.

In *State v. Duncan*, we uttered the following remarks: "'The State's burden for establishing whether a defendant has the present or likely future ability to pay discretionary legal financial obligations is a low one.'" 180 Wn. App. at 250 (quoting, *State v. Lundy*, 176 Wn. App. 96, 106, 308 P.3d 755 (2013). "[A] single reference in a presentence report to the defendant describing himself as 'employable'" is sufficient for imposing discretionary legal financial obligations. *State v. Duncan*, 180 Wn. App. at 250. A "'trial court is prohibited from imposing legal financial obligations only when it appears from the record that there is no likelihood that the defendant's indigency will end.'" *State v. Duncan*, 180 Wn. App. at 250 (quoting, *State v. Lundy*, 176 Wn. App. at

99).

The Washington Supreme Court's *Blazina* opinion diverges from these three principles we announced or repeated in *Duncan*. *Blazina* directs the superior court to conduct a detailed probe into the defendant's ability to pay costs. The *Blazina* court wrote:

> Practically speaking, this imperative under RCW 10.01.160(3) means that the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay. Within this inquiry, the court must also consider important factors, as amici suggest, such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay.

182 Wn.2d at 838.

Some of this court's decisions before *Blazina* held that an order imposing legal financial obligations was not ripe for review until the State sought to collect the judgment for legal financial obligations. This rule contrasted with the principle that a judgment debtor in a civil case could appeal the judgment before the judgment creditor took collection actions. We noted, in *State v. Duncan*, that this court had denied review on ripeness grounds on other occasions. We did not hold in *Duncan* that an order imposing legal financial obligations was not ripe for review, but we did not expressly disclaim ripeness as a ground for denying review.

In *State v. Blazina*, our high court rejected the State's argument that the legitimacy of a legal financial obligation order is not ripe for review until the State begins collection activity. The high court reviewed the three criteria for ripeness. The court reasoned that

a challenge to legal financial obligations meets the criteria since the challenge is primarily legal, does not require further factual development, and the challenged action is final. 182 Wn.2d at 832 n.1. The *Blazina* court noted reasons for review before collection activities. A judgment for legal financial obligations accrues interest at a high rate, employment and housing background checks show an active record in the superior court, and the judgment impairs the obligor's credit. In short, pending legal financial obligations increase the difficulty of a defendant in reentering society.

*Duncan* could be read as establishing a practice of rarely, if ever, reviewing a challenge to legal financial obligations for the first time on appeal. Because of the negative consequences of outstanding legal financial obligations on a released defendant, I hope any such practice changes.

I CONCUR

_____
Fearing, J.