IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30548-1-III |
| Respondent, | ) | |
| v. | ) | |
| LOUIS VICTOR KUSTER also known as LOUIS V. KUSTER, | ) | PUBLISHED OPINION |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — Louis Kuster challenges two terms of the sentence imposed

for his conviction of second degree rape: a restriction on any access to pornography and

what he characterizes as an implicit finding that he has the ability to pay $800 in legal

financial obligations (LFOs), which he contends is unsupported by the record.

The State concedes that the pornography restriction is unconstitutionally vague in

light of *State v. Bahl*, 164 Wn.2d 739, 193 P.3d 678 (2008), a concession we accept. We

conclude that the LFOs at issue are largely mandatory fees, as to which Mr. Kuster's

arguments have no application. To the extent the court imposed costs, we decline to

consider Mr. Kuster's argument for the first time on appeal that the court made an

unsupported, implicit finding of his ability to pay. We remand for the limited purpose of

the trial court striking or narrowing the access to pornography condition. We otherwise

affirm.

## FACTS AND PROCEDURAL BACKGROUND

The jury found Louis Kuster guilty of second degree rape in November 2011. At

sentencing, the court imposed $800 in LFOs, consisting of a $500 victim assessment fee,

$200 in court costs, and a $100 DNA[1] collection fee.

The judgment included boilerplate language that the court had "considered the

total amount owing, the defendant's past, present and future ability to pay [LFOs],

including the defendant's financial resources and the likelihood that the defendant's

status will change." Clerk's Papers (CP) at 31. It did not include any explicit finding

that Mr. Kuster had the past, present, or future ability to pay the LFOs. The record of the

sentencing hearing does not reveal the presentation or consideration of any information

about Mr. Kuster's ability to pay other than the following statements by the court about

his prospects for earnings during incarceration:

> I will set a minimum monthly payment of $5 per month. I do that because
> you are going to be in the institution. I would expect at some point you will
> get employment within the institution, but you are going to be at the bottom
> of the list as . . . a new person coming in. It may take a while, number one,
> and number two they do not pay a whole lot. It is certainly substantially
> less than the minimum wage. I will make your first payment due on or
> before June 15th because you are going to have to go to classifications and
> that might take a couple months before you go to an institution. And then

---

[1] Deoxyribonucleic acid.

2

you may take some more months before you will be eligible to earn any money.

Report of Proceedings (Jan. 4, 2012) at 27. Mr. Kuster did not object at the sentencing hearing that his sentence included an unsupported implicit finding of his ability to pay the LFOs.

The trial court sentenced Mr. Kuster to 114 months with credit for time served, explaining to him that in light of the "determinate plus"[2] sentencing provided by RCW 9.94A.507, 114 months would be his minimum sentence, with his maximum sentence (up to life) to be determined by the indeterminate sentencing review board.

The trial court's judgment also included, as a condition of Mr. Kuster's period of community custody (which is up to life), "That you do not view or possess pornography in any form." CP at 27.

Mr. Kuster appeals the pornography restriction and what he characterizes as an implicit finding of his ability to pay his LFOs.

## ANALYSIS

The State concedes that Mr. Kuster may challenge the condition restricting his access to pornography for the first time on appeal. It also concedes that the condition is

---

[2] "Determinate plus" is a term used by state agencies to reflect the determinate and indeterminate components of sentences imposed on nonpersistent sex offenders. WASH. STATE CASELOAD FORECAST COUNCIL, 2012 WASHINGTON STATE ADULT SENTENCING GUIDELINES MANUAL § 3, at 24-25 (version 20121231).

unconstitutionally vague. *See Bahl*, 164 Wn.2d at 745. It agrees that the condition must be stricken or narrowed. We accept the State's concessions. With that, there is only one disputed issue, raised for the first time on appeal: whether, as Mr. Kuster argues, by ordering him to begin making monthly payments toward his LFOs in June 2012, the trial court implicitly found, without supporting evidence, that he had the ability to pay.

Whenever a person is convicted in superior court, the court may order the payment of LFOs as part of the sentence. RCW 9.94A.760(1). Among the financial obligations the court may impose are certain costs, including expenses specially incurred by the State in prosecuting the defendant. RCW 10.01.160(1), (2). By statute, the court is not authorized to order a defendant to pay costs unless he or she is or will be able to pay them. RCW 10.01.160(3). In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose. *Id.*

Two of the LFOs imposed by the trial court on Mr. Kuster are not discretionary costs governed by RCW 10.01.160. They are, instead, statutorily mandated financial obligations. The $500 victim assessment is mandated by RCW 7.68.035 and the $100 DNA collection fee is mandated by RCW 43.43.7541. Neither statute requires the trial court to consider the offender's past, present, or future ability to pay. Monetary assessments that are mandatory may be imposed on indigent offenders at the time of sentencing without raising constitutional concern because "'[c]onstitutional principles

4

will be implicated . . . only if the government seeks to enforce collection of the assessments at a time when [the defendant is] unable, through no fault of his own, to comply,'" and "'[i]t is at the point of enforced collection . . ., where an indigent may be faced with the alternatives of payment or imprisonment, that he may assert a constitutional objection on the ground of his indigency.'" *State v. Blank*, 131 Wn.2d 230, 241, 930 P.2d 1213 (1997) (most alterations in original) (internal quotation marks omitted) (quoting *State v. Curry*, 118 Wn.2d 911, 917, 829 P.2d 166 (1992)); *and see State v. Thompson*, 153 Wn. App. 325, 336-38, 223 P.3d 1165 (2009) (DNA fee); *State v. Williams*, 65 Wn. App. 456, 460-61, 828 P.2d 1158, 840 P.2d 902 (1992) (victim penalty assessment).

The remaining $200 imposed was labeled "court costs" and the specific cost the court had in mind is not known. It may well be the $200 criminal filing fee—another mandatory fee provided by RCW 36.18.020(2)(h)—but for purposes of appeal we may not rely on that assumption.

The State responds to Mr. Kuster's challenge to this alleged implicit finding by arguing that the trial court's consideration of his prospects of prison employment was enough to support an implicit finding, given his 114-month minimum, ultimately indeterminate sentence. The State does not address the fact that the trial court made no *explicit* finding of ability to pay. It does not address *State v. Crook*, 146 Wn. App. 24, 189 P.3d 811 (2008), in which we held that Department of Corrections deductions from

5

inmate wages—the mechanism for payment evidently contemplated by this court—are not collection actions requiring review of ability to pay because statutory formulas for payment ensure that inmate accounts will not be reduced below indigency levels. RCW 72.11.020; RCW 72.09.111(1); former RCW 72.09.015(13) (2009). The State does not address whether, if the court did err, we should consider it for the first time on appeal.

RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them. *State v. Guzman Nuñez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011) (citing *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)), *aff'd*, 174 Wn.2d 707, 285 P.3d 21 (2012). We may decline to address an issue under RAP 2.5(a) sua sponte. *State v. Kirkpatrick*, 160 Wn.2d 873, 880 n.10, 161 P.3d 990 (2007), *overruled in part on other grounds by State v. Jasper*, 174 Wn.2d 96, 271 P.3d 876 (2012). Given the likelihood that the $200 imposed in costs was a mandatory fee and the ample protection for Mr. Kuster's constitutional rights that exist if and when the State takes action to collect the LFOs, we decline to consider this assignment of error further.

We remand to the trial court for the limited purpose of striking or narrowing the access to pornography condition to satisfy the constitutional vagueness concerns addressed in *Bahl*, e.g., by revising the condition to prohibit Mr. Kuster from using or

6

No. 30548-1-III
*State v. Kuster*

possessing any depictions of "sexually explicit conduct" as defined in former RCW

9.68A.011(3) (2002). We otherwise affirm.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Brown, J.

_____
Kulik, J.