

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 72363-4-I |
| Respondent, | |
| v. | DIVISION ONE |
| CHANDRA M. WITT, | UNPUBLISHED OPINION |
| Appellant. | FILED: November 10, 2014 |

LEACH, J. — Chandra Witt appeals her conviction for trafficking in stolen property in the second degree. She argues that the trial court should not have admitted her statement to police that she traded methamphetamine for stolen copper tubing because it was not relevant. She also contends that the court erred by imposing legal financial obligations (LFOs) without considering her ability to pay. Witt assigns error to the trial court's failure to advise her orally of the loss of her right to possess a firearm, which the State concedes. And in a statement of additional grounds, Witt alleges ineffective assistance of counsel. Because the trial court did not abuse its discretion in admitting Witt's statement and the allegations in her statement of additional grounds have no merit, we affirm Witt's conviction. But we remand for a resentencing hearing for the trial court to consider Witt's ability to pay LFOs and to advise her orally of the loss of her firearm rights.

Background

On June 20, 2012, an employee at the Department of Licensing (DOL) offices in the city of Hoquiam discovered that copper tubing from the building's air conditioning system had been cut and removed from the outside of the building. Sergeant Sydney Strong of the Hoquiam Police Department responded to the employee's 911 call. The following day, Strong recovered about 14 feet of tubing that had been sold to Butcher's Scrap & Metal, a business located less than a mile from the DOL offices. Strong also obtained the receipt for the transaction. The driver's license recorded at the time of sale identified the seller as Anna Owens-Pierce.

Strong brought the tubing back to the DOL building, accompanied by a local technician specializing in heating, air conditioning, and refrigeration. The technician identified the tubing as refrigeration tubing and confirmed that it came from the DOL building by aligning pieces of it with stubs left at the building.

Several days later, Strong obtained a warrant to search Chandra Witt's apartment and placed Witt under arrest. In an oral statement to Strong, Witt acknowledged receiving copper pipe at her apartment from Rick Cottrell. She told Strong that she believed the pipe was stolen because Cottrell "does that sort of thing." She signed a written statement, in which she admitted giving Cottrell "about a $20.00 sack of meth" for the copper pipe, which she "assumed" was stolen "because he wouldn't get it anywhere else." Witt stated that she "was going to scrap" the pipe, but that after she returned from a brief absence, the

pipe was gone, as was Michelle Hinkle, an acquaintance to whom Witt said she gave "a little bit of meth" that day in exchange for some housekeeping.

The State charged Witt with trafficking in stolen property in the first degree. In her written statement, Witt also acknowledged selling "small amounts of meth" and keeping marijuana for her personal use. The court redacted this portion of the statement from the version the jury received but admitted the rest of the statement, including Witt's description of trading drugs for the pipe, as "relevant as to the knowledge of what's going on as far as this being an illegal transaction and a possession of something that was stolen."

At trial, Hinkle, who was convicted for her own involvement with Owens-Pierce in the sale of the pipe, testified for the State. She stated that Witt gave her the pipe as payment for the housekeeping work. Two witnesses testified for the defense. A jury was unable to reach a unanimous verdict on the charged offense[1] but found Witt guilty of the lesser included offense of trafficking in stolen property in the second degree.[2]

The judgment and sentence imposed a mandatory $500 victim assessment and $100 DNA (deoxyribonucleic acid) collection fee, as well as $200 in court costs, $500 for court-appointed attorney fees, and $72 in restitution to Butcher's Scrap & Metal. At sentencing, there was no discussion about Witt's current or likely future ability to pay LFOs. And on Witt's judgment and sentence

---

[1] RCW 9A.82.050 ("knowingly traffics in stolen property").
[2] RCW 9A.82.055 ("recklessly traffics in stolen property").

form, the court did not check any of the boxes that would indicate its findings about Witt's ability to pay. The judgment and sentence notifies Witt in writing of the loss of her right to own or possess a firearm. But at sentencing, the court did not orally advise Witt of her loss of this right.

Witt appeals.

Analysis

ER 404(b)

First, Witt challenges the trial court's admission of her statement to police that she obtained the copper pipe in exchange for methamphetamine. She argues that this evidence was not relevant and that its unfairly prejudicial effect "greatly outweighed" its "minimal probative value." She argues further that her statements do not fall within the res gestae of the trafficking charge because they "do[ ] not give immediate context or complete a necessary part of the story." She argues that the admission of this evidence violated ER 404(b) and constituted a prejudicial abuse of discretion.

"We review the trial court's interpretation of ER 404(b) de novo as a matter of law."[3] We then review a trial court's ruling on the admissibility of ER 404(b) evidence for abuse of discretion and will reverse only if the court's exercise of discretion is manifestly unreasonable or based on untenable grounds or reasons.[4]

---

[3] State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009).
[4] State v. Magers, 164 Wn.2d 174, 181, 189 P.3d 126 (2008).

ER 404(b) prohibits evidence of other crimes, wrongs, or acts to prove character and show action in conformity with it.[5] However, this evidence may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[6] The res gestae or "same transaction" exception to ER 404(b) allows evidence of other crimes or acts to "complete the story of a crime or to provide the immediate context for events close in both time and place to the charged crime."[7] Before admitting this evidence, the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is offered, (3) determine if the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value of the evidence against its prejudicial effect.[8]

In a preliminary hearing, the prosecutor offered Witt's postarrest statement, arguing that Witt's admission that methamphetamine was the currency for the transaction was "all part and parcel of the sale of the copper pipe and I think it goes as part of the res gestae. And . . . I think that reflects upon a person's knowledge that the property was stolen." Defense counsel requested that "that specific drug not be mentioned" as unduly prejudicial. Both parties agreed to the redaction of the two final paragraphs of Witt's statement, where

---

[5] ER 404(b); State v. Freeburg, 105 Wn. App. 492, 497, 20 P.3d 984 (2001).
[6] ER 404(b).
[7] State v. Lillard, 122 Wn. App. 422, 432, 93 P.3d 969 (2004).
[8] In re Det. of Coe, 175 Wn.2d 482, 493, 286 P.3d 29 (2012).

she admitted to selling methamphetamine on other occasions and possessing marijuana.

The court agreed with the State's ER 404(b) res gestae and knowledge arguments:

> [I]t is part of the res gestae. In fact, it's actually the compensation that was allegedly paid for the bucket of piping that's at issue in this case. . . . It shows knowledge to some extent by circumstantial evidence.
>
> I recognize I have to do somewhat of a balancing, but the balancing is whether it's relevant. I believe it's very relevant as to what was going on on this particular day in question, by her own statement, according to this [exhibit], and she signed it.

Defense counsel also opposed admitting the portion of the statement where Witt said she gave Michelle Hinkle "a little bit of meth" for helping with cooking and housekeeping that day. This conflicted with Hinkle's testimony that Witt paid her with the copper pipe. The court concluded, "I'm going to leave that part in. I believe it does go to this whole transaction and the time frame." But the court ordered the redaction of the two final paragraphs of the statement, as the parties agreed. And the court made a final statement about its balancing:

> I just think it's—the relevance is not outweighed by unfair prejudice. It's a situation where this is relevant material in the statement and the rule talks about only matters that are unfairly prejudicial. And I recognize there's always some prejudice when you engage in criminal conduct, but this was part of the actual transaction by the defendant's own statements to the officer.

Citing United States v. Carrasco,[9] the State argues that the circumstances of the transaction "all reflect upon [Witt's] guilty knowledge." In Carrasco, the

_____

[9] 257 F.3d 1045 (9th Cir. 2001).

court ruled that the defendant's possession of drug paraphernalia was relevant to prove the charged crime of knowing possession of a firearm.[10] But as Witt notes in a reply brief, the court's holding in Carrasco and similar cases depends on "the nexus between the drug trafficking evidence and the firearm and ammunition" because "'[f]irearms are known tools of the trade of narcotics dealing.'"[11] We agree with Witt that any nexus between narcotics and trafficking in stolen property is more attenuated than the nexus between drug trafficking evidence and firearms. The State's analogy to Carrasco and related cases to prove knowledge is imperfect at best.

But according to Witt's own sworn statement, the exchange of dubiously sourced copper pipe for drugs "provide[s] the immediate context for events close in both time and place to the charged crime."[12] We will uphold a trial court's admission of evidence under ER 404(b) if the record supports one of its cited bases.[13] Here, the record shows that the trial court conducted a proper inquiry before admitting the evidence. The court found by a preponderance of the evidence that the transaction occurred, which was not unreasonable given that Witt made the statement. The court identified res gestae as the purpose for

[10] Carrasco, 257 F.3d at 1049.

[11] Carrasco, 257 F.3d at 1048-49 (quoting United States v. Butcher, 926 F.2d 811, 816 (9th Cir. 1991)); see also United States v. Crespo de Llano, 838 F.2d 1006, 1018 (9th Cir. 1987) (firearms can be relevant to show involvement in narcotics trade); United States v. Simon, 767 F.2d 524, 527 (8th Cir. 1985) (firearms are known "tools of the trade" of narcotics dealing because of dangers inherent in that activity).

[12] Lillard, 122 Wn. App. at 432.

[13] State v. Powell, 126 Wn.2d 244, 264, 893 P.2d 615 (1995).

which the evidence was offered, determined that the evidence was relevant to prove an element of the crime of trafficking in stolen property, and weighed the probative value of the evidence against its prejudicial effect. The court redacted portions of Witt's statement that referred to unrelated and possibly unfairly prejudicial possession and sale of drugs. The court conducted its balancing on the record.

"The decision to admit evidence of other crimes or misconduct lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion."[14] The trial court did not abuse its discretion in finding the contested evidence relevant or in admitting it under the res gestae exception.

LFOs

Witt also challenges the trial court's imposition of LFOs of $500 for court-appointed attorney fees and $200 for court costs.[15] She argues that the court must consider her ability to pay before imposing these nonmandatory fees. We agree.

"Whenever a person is convicted in superior court, the court may order the payment of a legal financial obligation as part of the sentence."[16] While the $500 victim assessment fee and $100 DNA collection fee are statutorily

---

[14] State v. Brown, 132 Wn.2d 529, 571-72, 940 P.2d 546 (1997) (footnote omitted); see also State v. Lane, 125 Wn.2d 825, 835, 889 P.2d 929 (1995).

[15] Witt does not challenge the statutorily mandated victim penalty assessment and DNA collection fees, for which courts are not required to consider a defendant's ability to pay. RCW 7.68.035(1)(a); RCW 43.43.7541; State v. Kuster, 175 Wn. App. 420, 424, 306 P.3d 1022 (2013). Nor does she challenge the $72 in restitution imposed under RCW 9.94A.753.

[16] RCW 9.94A.760(1).

mandated, the imposition of court costs and appointed attorney fees is discretionary.[17] A trial court may order a convicted defendant to pay costs for appointed counsel,[18] and RCW 10.01.160(2) allows the recoupment of court costs "specially incurred by the state in prosecuting the defendant." A defendant may petition the court at any time for remission or modification of the payments on the basis of manifest hardship,[19] but "[b]ecause this determination is clearly somewhat 'speculative,' the time to examine a defendant's ability to pay is when the government seeks to collect the obligation."[20] Before imposing any discretionary costs, however, the court "shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."[21]

Here, because nothing in the record reflects that the State has attempted to collect LFOs from Witt, the issue of whether the LFOs are justified is not yet ripe for review. We note also that Witt challenges the LFOs for the first time on appeal after requesting in her presentence report that the court impose $200 in court costs and attorney fees "as the court deems proper." Her appeal of the LFOs may therefore be barred either by RAP 2.5(a) or the invited error

---

[17] RCW 7.68.035(1)(a); RCW 43.43.7541; RCW 9.94A.760.
[18] State v. Barklind, 87 Wn.2d 814, 817-19, 557 P.2d 314 (1976); State v. Smits, 152 Wn. App. 514, 520-21, 216 P.3d 1097 (2009).
[19] RCW 10.01.160(4); State v. Baldwin, 63 Wn. App. 303, 310-11, 818 P.2d 1116, 837 P.2d 646 (1991).
[20] Smits, 152 Wn. App. at 523-24 (citing Baldwin, 63 Wn. App. at 310-11).
[21] RCW 10.01.160(3).

doctrine.[22] As a threshold matter, however, we must decide if the trial court complied with its statutory duty under RCW 10.01.160(3) when it imposed the LFOs.

Witt's judgment and sentence contains boilerplate language, stating, "The court has considered the total amount owing, the defendant's past, present, and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change." The form then allows the court to check a box to indicate its findings, either that "[t]he defendant has the ability or likely future ability to pay the legal financial obligations imposed herein" or "[t]he following extraordinary circumstances exist that make restitution inappropriate."[23]

Here, the trial court did not check either box to indicate its findings. And because there was no discussion at sentencing of Witt's ability to pay, we cannot look to the court's oral ruling to supplement its written findings.[24] We presume that the court considered Witt's presentence report, in which she either requested costs or left them to the court's discretion, arguably implying an ability to pay. But this presumption, without more, is not sufficient to show that the court

_____

[22] Under the invited error doctrine, a party may not set up an error at trial and then complain of it on appeal. In re Pers. Restraint of Thompson, 141 Wn.2d 712, 723, 10 P.3d 380 (2000).

[23] The court may also find that "[t]he defendant has the present means to pay costs of incarceration," which is not at issue here.

[24] See State v. Hinds, 85 Wn. App. 474, 486, 936 P.2d 1135 (1997) (an oral decision may supplement written findings to the extent the oral decision does not conflict with the written findings).

complied with its statutory duty to consider Witt's financial resources and whether she is or will be able to pay the imposed LFOs.

In a statement of additional authorities, the State directs our attention to State v. Duncan,[25] in which Division Three of this court declined to address for the first time on appeal a challenge to a trial court's LFO order. A decision on this issue is also forthcoming from our Supreme Court in State v. Blazina,[26] for which the court heard oral argument earlier this year. But Duncan and Blazina involve a different question than the one presented here. Those cases ask if a defendant may challenge for the first time on appeal a trial court's LFO order that is allegedly based on unsupported findings.[27] Witt's case, by contrast, does not involve unsupported findings. The trial court made no findings. The record does not show that the court considered Witt's ability to pay. Therefore, we conclude that the trial court exceeded its statutory authority by imposing LFOs without "tak[ing] account of [Witt's] financial resources . . . and the nature of the burden that payment of costs will impose," as RCW 10.01.160(3) requires.[28] We vacate the order imposing LFOs and remand for a resentencing hearing on this issue.

---

[25] 180 Wn. App. 245, 254-55, 327 P.3d 699 (2014), petition for review filed, No. 90188-1 (Wash. Apr. 30, 2014).

[26] 174 Wn. App. 906, 301 P.3d 492, review granted, 178 Wn.2d 1010 (2013).

[27] Duncan, 180 Wn. App. at 249; Blazina, 174 Wn. App. at 911.

[28] See State v. Moen, 129 Wn.2d 535, 546-48, 919 P.2d 69 (1996) (reversing an untimely restitution order as exceeding the trial court's statutory authority).

## Notification of Loss of Firearm Rights

The State concedes that the trial court did not notify Witt upon conviction "orally and in writing" that she may not possess a firearm, as required by RCW 9.41.047(1)(a). While the judgment and sentence contained this written notice, the court did not orally advise Witt of her loss of firearm rights.

RCW 9.41.047(1)(a) "'requires the convicting court to provide oral and written notice. The statute is unequivocal in its mandate.'"[29] We accept the State's concession and remand to the trial court for a resentencing hearing consistent with the requirements of RCW 9.41.047(1)(a).

## Statement of Additional Grounds

In a statement of additional grounds, Witt contends that she was "not given adequate coun[sel] for [her] defense." We review ineffective assistance of counsel claims de novo.[30] To establish such a claim, Witt must show (1) defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced her: that there is a reasonable possibility that but for counsel's deficient performance, the outcome of her trial would have been different.[31] Our scrutiny of defense counsel's performance is highly deferential, and we employ a strong presumption

---

[29] State v. Breitung, 173 Wn.2d 393, 403, 267 P.3d 1012 (2011) (quoting State v. Minor, 162 Wn.2d 796, 803, 174 P.3d 1162 (2008)).
[30] In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001).
[31] State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004) (citing State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)).

of reasonableness.[32] "To rebut this presumption, the defendant bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.'"[33] Failure on either prong of the test defeats an ineffective assistance of counsel claim.[34]

Witt alleges first that she received ineffective assistance because her attorney called only two witnesses from a list she gave him and did not call "the most important witness." But "'[t]he decision whether to call a witness is ordinarily a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel.'"[35] The record here does not demonstrate otherwise. Defense counsel may have had good reason not to call a witness whose statement conflicted with Witt's own sworn statement to police. This argument fails.

Witt also contends that defense counsel "refused to ask[ ] questions that I wrote down as the trial went on." Because matters of trial strategy or tactics do not establish deficient performance and this claim relies largely upon facts or evidence outside this record, we reject this argument.

Next, Witt asserts that defense counsel failed to impeach Michelle Hinkle. But the trial record shows that during cross-examination, counsel confronted

---

[32] Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995).

[33] State v. Grier, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting Reichenbach, 153 Wn.2d at 130).

[34] Strickland, 466 U.S. at 697.

[35] State v. Statler, 160 Wn. App. 622, 636, 248 P.3d 165 (2011) (quoting State v. Kolesnik, 146 Wn. App. 790, 812, 192 P.3d 937 (2008)).

Hinkle with several past crimes of dishonesty. Counsel also cross-examined each of the State's other witnesses.

The law affords trial counsel wide latitude in the choice of tactics.[36] Witt does not demonstrate that in choosing tactics, defense counsel did not "do everything in his power to tell her side of the story." Because she establishes neither deficient performance nor prejudice, Witt's claim of ineffective assistance fails.

## Conclusion

Because the trial court did not abuse its discretion in admitting ER 404(b) evidence and Witt's claims in her statement of additional grounds have no merit, we affirm her conviction for trafficking in stolen property in the second degree. But because the trial court did not consider Witt's ability to pay LFOs and did not orally advise her of the loss of her right to possess a firearm, we vacate the order imposing LFOs and remand to the trial court for a resentencing hearing on these issues.

Leach, J.

WE CONCUR:

Cox, J.

Jan, D.

---

[36] In re Pers. Restraint of Stenson, 142 Wn.2d 710, 736, 16 P.3d 1 (2001).