IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32840-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EMILY KRISTEN DALHAUG, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Emily Dalhaug appeals her conviction for assault and the trial court's impositions of legal financial obligations in this case of sisterly love. She claims that the trial court erred in failing to instruct the jury on self-defense. She argues that the trial court erred in imposing legal financial obligations without addressing her ability to pay the obligations and that a DNA (deoxyribonucleic) collection fee is unconstitutional. We affirm the trial court's rulings.

FACTS

Emily Dalhaug rode as a passenger in a car driven by her sister, Tomi Maine, through Warden. Dalhaug complained to Maine about Maine's texting while driving. Maine stopped the car and struck Dalhaug's left shoulder with the backside of her right hand. Maine drove again, and Dalhaug punched Maine with a closed fist on her cheek. The punch shoved Maine to the side, and Maine's car swerved toward the street's center line. Ross Rumbolz, who drove in the opposite direction as the sisters, saw Dalhaug thump Maine.

Tomi Maine stopped her vehicle on the side of the road. Both sisters exited the car and argued with one another. Ross Rumbolz also stopped his vehicle and called his stepfather Mike Martin, a sergeant with the Warden Police Department, to report the altercation. Martin arrived at the side of the road within one minute.

Sergeant Mike Martin found the sisters yelling at one another. Another officer arrived and sat with Emily Dalhaug, while Martin spoke with Tomi Maine. Both sisters consistently relayed that Maine backhanded Dalhaug in the shoulder and Dalhaug responded by punching Maine in the side of the head. Maine had minor injuries on her ear and lower jaw. Martin placed Dalhaug under arrest. Upon searching Dalhaug's backpack, Sergeant Martin discovered a small amount of marijuana, a scale with crystal residue, a marijuana pipe, and a second pipe with a small chunk of a crystal substance consistent with methamphetamine. Later, Dalhaug signed a statement, typed by Sergeant

Martin, describing the row.

## PROCEDURE

The State of Washington charged Emily Dalhaug with possession of methamphetamine, assault in the fourth degree/domestic violence, and use of drug paraphernalia. At trial, the trial court admitted Dalhaug's written, signed statement given to Sergeant Mike Martin after her arrest. Dalhaug did not testify.

Dalhaug requested a jury instruction on self-defense. The instruction read:

> A person is entitled to act on appearances in defending himself, if he believes in good faith and on reasonable grounds that he is in actual danger of injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

Clerk's Papers (CP) at 42. The trial court declined to give the instruction. The State dismissed, before its closing argument, the charge of use of drug paraphernalia.

The jury found Emily Dalhaug guilty of possession of methamphetamine and assault in the fourth degree, domestic violence. The trial court sentenced Dalhaug to one month confinement for possession of methamphetamine, converted to 224 hours of community service and twelve months of community custody. The court meted a concurrent sentence of 364 days confinement, suspended, for fourth degree domestic violence assault. The trial court imposed $989.60 in legal financial obligations, which included $189.60 in discretionary fees and $800.00 in mandatory fees. The mandatory fees contained a $100.00 DNA collection fee. The trial court did not inquire regarding

3

Dalhaug's present or future ability to pay the legal financial obligations, but the judgment and sentence encompassed a boilerplate finding of the ability to pay. Dalhaug did not object to the imposition of discretionary financial obligations or the mandatory DNA collection fee. The trial court found Dalhaug indigent for purposes of this appeal.

## LAW AND ANALYSIS

Emily Dalhaug raises three assignments of error on appeal: (1) the trial court erred in declining to give her jury instruction on self-defense, (2) the trial court erred when it ordered legal financial obligations without considering Dalhaug's current and future ability to pay, and (3) the mandatory $100 DNA collection fee ordered under RCW 43.43.7541 is unconstitutional as applied to defendants who do not have the ability or likely future ability to pay the fine. We affirm Dalhaug's conviction and decline to address her challenges to the legal financial obligations. Thus, we also affirm Dalhaug's sentence.

### *Self-Defense Jury Instruction*

Emily Dalhaug first contends that the trial court erred in declining to give a jury instruction on self-defense to the charge of assault. She maintains that she presented enough evidence at trial to support rendering the instruction. The State contends that the trial court did not err in declining to present the instruction because no evidence indicated that Dalhaug subjectively or objectively believed she was in danger of injury when she punched her sister. We agree with the State.

4

To be entitled to a jury instruction on self-defense, the defendant must produce some evidence demonstrating self-defense. *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997). Evidence of reasonable apprehension of great bodily harm, or imminent danger, will suffice. *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999). Evidence of self-defense is assessed from the perspective of a reasonably prudent person standing in the shoes of the defendant, knowing all the defendant knows and seeing all the defendant sees. *State v. Riley*, 137 Wn.2d at 909. Failure to give the instruction, when self-defense is supported by sufficient evidence, is reversible error if it prejudices the defendant. *State v. Werner*, 170 Wn.2d 333, 337, 241 P.3d 410 (2010).

Emily Dalhaug did not testify at trial. During trial, Dalhaug submitted no testimony that she either reasonably apprehended great bodily harm from Tomi Maine or that she feared imminent danger when she struck her sister. In her written statement submitted as an exhibit, Dalhaug mentioned her sister's initial aggression by a backhanded slap on the shoulder. She admitted that she grew angry and responded by punching her sister in the side of the head. A reasonably prudent person standing in Dalhaug's shoes would not have feared imminent harm or danger from Maine's slap to the shoulder, while driving the car in which she and Dalhaug rode. Dalhaug punched her sister in anger, not in fear.

5

*Legal Financial Obligations*

Emily Dalhaug next contends that the trial court erred in ordering her to pay legal financial obligations, without inquiring whether she had the current or future ability to pay them. She argues that although she did not object below, the Supreme Court's recent decision, *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), and public policy counsel in favor of this court's exercise of its discretion to review issues under RAP 2.5. The State urges the court to decline consideration of this issue, arguing that although there is no evidence in the record that Dalhaug has a present or future ability to pay, there is likewise no evidence in the record that she does not have the ability to pay. The State complains that remanding for resentencing will incur additional public expense, and implies that $189.60 is not a large enough amount of money to warrant such expense.

Whenever a person is convicted in superior court, the court may order the payment of legal financial obligations as part of the sentence. RCW 9.94A.760(1). The financial obligations may include certain costs, including expenses incurred by the State in prosecuting the defendant. RCW 10.01.160(1), (2). The trial court imposed a $500 victim assessment fee, a $200 criminal filing fee, and a $100 DNA collection fee. RCW 7.68.035, RCW 36.18.020(2)(h), and RCW 43.43.7541 respectively mandate the fees regardless of the defendant's ability to pay. Trial courts must impose such fees regardless of a defendant's indigency. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

The remaining $189 in court costs was discretionarily imposed by the court on Emily Dalhaug. By statute, the court is not authorized to order a defendant to pay these costs unless he or she is or will be able to pay them. RCW 10.01.160(3). In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose. RCW 10.01.160(3); *State v. Kuster*, 175 Wn. App. 420, 424, 306 P.3d 1022 (2013).

*State v. Blazina,* 182 Wn.2d 827 (2015) addresses the situation when a defendant fails to object to imposition of legal financial obligations by the trial court even when the court fails to engage in an individualized inquiry into the ability of the defendant to pay. *Blazina* requires that a trial court enter an individualized finding, on the record, of a defendant's current or future ability to pay obligations before assessing discretionary costs. When the defendant did not raise error below, *State v. Blazina* affords this court discretion when determining whether to review a challenge to legal financial obligations not raised before the trial court. This panel generally does not accept review of discretionary fees imposed below $750. We follow this practice and deny review of Emily Dalhaug's challenge to her legal financial obligations.

## DNA Collection Fee

Emily Dalhaug next argues, for the first time on appeal, that the imposition of a mandatory DNA collection fee without inquiry into ability to pay violates substantive due process and equal protection principles. RCW 43.43.754 demands a biological sample,

7

for purposes of DNA identification analysis, from an adult convicted of a felony. In turn, RCW 43.43.7541 imposes a $100 mandatory fee upon the adult convicted of a felony to defray the cost of the collection of the sample. The latter statute reads, in relevant part:

> Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars. The fee is a court-ordered legal financial obligation as defined in RCW 9.94A.030 and other applicable law. For a sentence imposed under chapter 9.94A RCW, the fee is payable by the offender after payment of all other legal financial obligations included in the sentence has been completed. For all other sentences, the fee is payable by the offender in the same manner as other assessments imposed. . . .

Emily Dalhaug did not challenge the constitutionality of the DNA collection fee before the trial court. We, therefore, decline to address the argument under the circumstances of this appeal.

A party may not generally raise a new argument on appeal that the party did not present to the trial court. *In re Det. of Ambers*, 160 Wn.2d 543, 557 n.6, 158 P.3d 1144 (2007). A party must inform the court of the rules of law it wishes the court to apply and afford the trial court an opportunity to correct any error. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

RAP 2.5 formalizes a fundamental principle of appellate review. The first sentence of the rule reads:

> **(a) Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court.

No procedural principle is more familiar than that a constitutional right, or a right of any other sort, may be forfeited in criminal cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944).

Good sense lies behind the requirement that arguments be first asserted at trial. The prerequisite affords the trial court an opportunity to rule correctly on a matter before it can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). There is great potential for abuse when a party does not raise an issue below because a party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal. *State v. Weber*, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006); *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). The theory of preservation by timely objection also addresses several other concerns. The rule serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address. *State v. Strine*, 176 Wn.2d at 749-50; *State v. Scott*, 110 Wn.2d 682, 685-88, 757 P.2d 492 (1988).

9

Countervailing policies support allowing an argument to be raised for the first time on appeal. For this reason, RAP 2.5(a) contains a number of exceptions. RAP 2.5(a)(3) allows an appellant to raise for the first time "manifest error affecting a constitutional right," an exception on which a criminal appellant commonly relies. Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d at 686-87. Prohibiting all constitutional errors from being raised for the first time on appeal would result in unjust imprisonment. 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5 author's cmt. 6, at 218 (8th ed. 2014). On the other hand, "permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts." *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992) (emphasis in original).

Washington courts and even decisions internally have announced differing formulations for "manifest error." First, a manifest error is one "truly of constitutional magnitude." *State v. Scott*, 110 Wn.2d at 688. Second, perhaps perverting the term "manifest," some decisions emphasize prejudice, not obviousness. The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights. It is this showing of actual prejudice that makes

10

the error "manifest," allowing appellate review. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2010); *Scott*, 110 Wn.2d at 688; *Lynn*, 67 Wn. App. at 346. A third and important formulation for purposes of this appeal is the facts necessary to adjudicate the claimed error must be in the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).

In *State v. Riley*, Joseph Riley argued that the admission of incriminating statements violated his Fourth Amendment rights because the statements were the fruit of an illegal search of his home. The state high court refused to entertain the argument because the record lacked clarity as to whether Riley uttered the statements before being told the investigating officer possessed a search warrant.

We consider whether the record on appeal is sufficient to review Emily Dalhaug's constitutional arguments. Dalhaug's contentions assume her poverty. Nevertheless, the record contains no information, other than Dalhaug's statutory indigence for purposes of hiring an attorney, that she lacks funds to pay a $100 fee. The cost of a criminal charge's defense exponentially exceeds $100. Therefore, one may be able to afford payment of $100, but not afford defense counsel. Dalhaug has presented no evidence of her assets, income, or debts. Thus, the record lacks the details important in resolving Dalhaug's due process argument.

Emily Dalhaug underscores that other mandatory fees must be paid first and interest will accrue on the $100 DNA collection fee. This emphasis helps Dalhaug little,

11

since we still lack evidence of her financial condition.

CONCLUSION

We affirm Emily Dalhaug's conviction and sentence.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.