IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33198-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CARLOS VALDEZ, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Carlos Valdez pleaded guilty to one count of murder in the second degree while armed with a firearm, as an accomplice. He appeals his sentence, and argues (1) the trial court erred in imposing nearly $6,000 of discretionary legal financial obligations (LFOs) without conducting an individualized inquiry into his current and future ability to pay, (2) the mandatory $100 DNA[1] collection fee violates substantive due process, and (3) the trial court failed to follow the procedural requirements set forth in CrR 7.8(c) when it denied his postjudgment motion to withdraw his guilty plea. Mr. Valdez also filed a statement of additional grounds for review (SAG)

---

[1] Deoxyribonucleic acid

requesting that he be allowed to withdraw his guilty plea because he pleaded guilty as an accomplice, but was sentenced as a principal. We exercise our discretion and review the claimed LFO error. We remand to the trial court for it to conduct an individualized inquiry into Mr. Valdez's present and future ability to pay. In all other respects, we deny his contentions and affirm.

## FACTS

On January 9, 2014, the State charged Carlos Valdez with one count of first degree murder. The certificate of probable cause indicated that on January 3, 2014, the body of a 20-year-old female was found on a riverbank. The victim had been shot and then thrown or pushed down the riverbank. Mr. Valdez was implicated as the shooter. Apparently, the victim owed a methamphetamine supplier an ounce of methamphetamine. The supplier informed Mr. Valdez that he had two choices: either Mr. Valdez or the victim needed to pay him, or the victim had to die.

On December 19, 2014, the State filed an amended information, charging Mr. Valdez with second degree murder while armed with a firearm, either as a principal or an accomplice. That day, Mr. Valdez pleaded guilty to the amended information, choosing to plead as an accomplice. Mr. Valdez's plea statement indicated that the standard range sentence was between 123-220 months, plus a 60-month enhancement. The State agreed

2

to recommend 183 months. During the colloquy with the trial court at the plea hearing,

Mr. Valdez acknowledged:

> On December 31, 2013, I did act as an accomplice to the intentional shooting of and killing of [the victim], a human being. This took place without premeditation. During the commission of this crime, my accomplice was armed with a firearm. This took place in Walla Walla County, Washington. I have been informed by my attorneys what it means to be an accomplice.

Report of Proceedings (RP) at 3-4.

On February 9, 2015, Mr. Valdez was sentenced for one count of second degree

murder while armed with a firearm. The trial court stated that it had an opportunity to

spend a "great deal of time" on the file, including the presentence investigation (PSI). RP

at 17. Based mostly on Mr. Valdez's lack of remorse, the trial court opted against

imposing the recommended sentence and instead imposed 280 months of incarceration.

During sentencing, the trial court did not make any comments concerning Mr.

Valdez's current or future ability to pay LFOs. On appeal, the State notes that the PSI

contains information concerning Mr. Valdez's current and future ability to pay. The PSI

notes that Mr. Valdez became involved in gangs, drugs, and alcohol and attended nine

different middle and high schools before dropping out completely. Since dropping out,

he worked one day as a laborer, and has supported himself by a variety of criminal means.

The PSI further notes that Mr. Valdez obtained "very few high school credits," but that

3

this was likely due to his truancy rather than any learning disability. Clerk's Papers (CP) at 20. Mr. Valdez informed the author of the PSI of his intent to obtain his GED (general education development) while in prison. Under a section entitled "Financial," the PSI notes that Mr. Valdez "has been supporting himself . . . via criminal means, primarily drug dealing and retail thefts. He has no legal income source." CP at 20.

The trial court imposed LFOs of $11,680.61 on Mr. Valdez, which consisted of a $100.00 DNA collection fee, $500.00 victim assessment fee, $5,099.01 in restitution, $200.00 in court costs, a $100.00 crime laboratory fee, $249.10 in sheriff fees, $775.00 in fees for the court-appointed attorney, and $4,657.50 in court-appointed defense experts and other defense costs. The judgment and sentence contained the following boilerplate language:

> 2.4 ABILITY TO PAY LEGAL FINANICAL OBLIGATIONS.
> (RCW 9.94A.760) The court has considered the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court specifically finds that the defendant has the ability or likely future ability to pay the legal financial obligations ordered herein.

CP at 27. The trial court informed Mr. Valdez that he would begin making payments "90 days after [his] release or when funds become available at not less than $50 per month." RP at 17.

4

On February 17, 2015, Mr. Valdez filed a motion to withdraw his guilty plea. His motion argued that the State failed to enthusiastically support the plea agreement, the plea lacked an adequate basis in fact, the PSI was subjective, and he received ineffective assistance of counsel. One week later, Mr. Valdez, pro se, appealed his conviction, asserting the same arguments contained in his yet to be considered motion. On March 16, 2015, Mr. Valdez filed another notice of appeal, requesting review of his February 9, 2015 judgment and sentence. On March 23, 2015, the trial court denied Mr. Valdez's postjudgment motion to withdraw his guilty plea. The motion hearing was conducted ex parte, without the presence of Mr. Valdez. Mr. Valdez did not file another notice of appeal seeking review of the order denying his postjudgment motion to withdraw his guilty plea.

## ANALYSIS

A.    *Review of unpreserved LFO claim*

Whenever a person is convicted, the trial court "may order the payment of a legal financial obligation" as part of the sentence. RCW 9.94A.760(1); *accord* RCW 10.01.160(1). From the date of judgment, LFOs bear interest at a rate of 12 percent per annum. *See* RCW 4.56.110(4); *see also* RCW 19.52.020(1). Under RCW 10.01.160(3), "the court shall take account of the financial resources of the defendant and

5

the nature of the burden that payment of costs will impose." In other words, "a trial court has a statutory obligation to make an individualized inquiry into a defendant's current and future ability to pay before the court imposes LFOs." *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015).

Importantly, "the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry." *Id.* at 838. The individualized inquiry requires the court to "consider important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay." *Id.* "The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay." *Id.* However, neither RCW 10.01.160 nor the Washington Constitution "'requires a trial court to enter formal, specific findings regarding a defendant's ability to pay [discretionary] court costs.'" *State v. Lundy*, 176 Wn. App. 96, 105, 308 P.3d 755 (2013) (quoting *State v. Curry*, 118 Wn.2d 911, 916, 829 P.2d 166 (1992)).

This court "review[s] a decision on whether to impose LFOs for abuse of discretion." *State v. Clark*, 191 Wn. App. 369, 372, 362 P.3d 309 (2015). "The trial court's determination 'as to the defendant's resources and ability to pay is essentially factual and should be reviewed under the clearly erroneous standard.'" *State v. Bertrand*,

6

165 Wn. App. 393, 404 n.13, 267 P.3d 511 (2011) (quoting *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116 (1991)).

Subject to three exceptions, RAP 2.5(a) provides that an "appellate court may refuse to review any claim of error which was not raised in the trial court." In *Blazina*, the Washington Supreme Court recently confirmed that an appellate court's discretion under RAP 2.5(a) extends to review of a trial court's imposition of discretionary LFOs. *Blazina*, 182 Wn.2d at 830. However, "[a] defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review." *Id.* at 832.

"While such unpreserved LFO errors do not command review as a matter of right, each appellate court is entitled to 'make its own decision to accept discretionary review.'" *State v. Munoz-Rivera*, 190 Wn. App. 870, 895, 361 P.3d 182 (2015) (quoting *Blazina*, 182 Wn.2d at 835). One approach is to "consider the administrative burden and expense of bringing [a defendant] to a new sentencing hearing and the likelihood that the LFO result would change." *State v. Arredondo*, 190 Wn. App. 512, 538, 360 P.3d 920 (2015). This is the approach favored by this author.

Here, the trial court imposed both mandatory and discretionary LFOs, and Mr. Valdez failed to object to any LFO issues during sentencing. The $500.00 victim

7

assessment, $100.00 DNA collection fee, and $5,099.01 in restitution apply irrespective

of Mr. Valdez's ability to pay. *See Lundy*, 176 Wn. App. at 102 ("For victim restitution,

victim assessments, DNA fees, and criminal filing fees, the legislature has directed

expressly that a defendant's ability to pay should not be taken into account.").  However,

the $200.00 in court costs, $100.00 crime laboratory fee, $249.10 in sheriff fees, $775.00

in fees for the court-appointed attorney, and $4,657.50 in court-appointed defense experts

and other defense costs are all discretionary LFOs. *See State v. Kuster*, 175 Wn. App.

420, 425, 306 P.3d 1022 (2013) (ambiguous $200.00 "court costs" cannot be considered

mandatory fee); *see also* RCW 43.43.690(1) (crime laboratory fee may be suspended if

the court "finds that the person does not have the ability to pay the fee"); *see also Munoz-Rivera*, 190 Wn. App. at 893 (sheriff fees and court-appointed attorney fees are

discretionary).  The discretionary LFOs total almost $6,000.00.

Because of the relatively high amount of discretionary LFOs, the near quadrupling

of the LFO judgment due to over 20 years of interest while incarcerated, Mr. Valdez's

lack of a high school education, lack of any work history, and the sense that a convicted

murderer has limited job prospects on release, we exercise our discretion in favor of

reviewing the unpreserved error.

The record of the sentencing hearing does not reveal the presentation or consideration of any information about Mr. Valdez's present or future ability to pay LFOs. Although the PSI makes passing remarks about Mr. Valdez's past illegal income sources, we do not consider such sources as relevant to the inquiry of one's present or future ability to pay. Inherent in the required individualized inquiry, is Mr. Valdez's potential to pay LFOs from gainful employment. We, therefore, remand this case to the trial court with instructions to conduct an individualized inquiry into Mr. Valdez's present and future ability to pay.

B.     *Substantive due process challenge to the DNA collection fee*

Mr. Valdez next contends that the application of RCW 43.43.7541 to defendants who do not have the ability, or likely future ability, to pay the $100 DNA collection fee violates substantive due process. RCW 43.43.754 demands a biological sample, for purposes of DNA identification analysis, from every defendant convicted of a felony. Pursuant to RCW 43.43.7541, "[e]very sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars" to create an offender DNA sample. The statute "furthers the purpose of funding for the state DNA database and agencies that collect samples." *State v. Thornton*, 188 Wn. App. 371, 375, 353 P.3d 642 (2015).

9

"Statutes are presumed to be constitutional." *State v. Blank*, 131 Wn.2d 230, 235, 930 P.2d 1213 (1997). "A party challenging the constitutionality of a statute has the heavy burden of proving its unconstitutionality beyond a reasonable doubt." *Id.* This court reviews constitutional challenges de novo. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006).

The State responds that Mr. Valdez lacks standing to challenge the constitutionality of RCW 43.43.7541. RAP 3.1 provides that for appellate standing, "[o]nly an aggrieved party may seek review by the appellate court." An aggrieved party is "one whose proprietary, pecuniary, or personal rights are substantially affected" by the trial court's order. *Cooper v. City of Tacoma*, 47 Wn. App. 315, 316, 734 P.2d 541 (1987).

The DNA collection fee is a mandatory LFO. *See* RCW 43.43.7541; *see also Lundy*, 176 Wn. App. at 102. Washington has adopted the view that "'[c]onstitutional principles will be implicated . . . only if the government seeks to enforce collection of the assessments "at a time when [the defendant is] unable, through no fault of his own, to comply."'" *Lundy*, 176 Wn. App. at 103 n.4 (some alterations in original) (quoting *United States v. Pagan*, 785 F.2d 378, 381-82 (2d Cir. 1986)). "'It is at the point of enforced collection . . . , where an indigent may be faced with the alternatives of payment

or imprisonment, that he may assert a constitutional objection on the grounds of his indigency.'" *Kuster*, 175 Wn. App. at 424-25 (quoting *Blank*, 131 Wn.2d at 241).

Here, any potential constitutional implications in the enforcement of RCW 43.43.7541 as applied to Mr. Valdez will not arise until the State attempts to collect the $100 DNA collection fee from him. When that occurs, Mr. Valdez will be able to petition for remission of payments under RCW 10.01.160(4), if needed. Until the State tries to collect the $100 DNA fee, Mr. Valdez lacks standing to challenge the constitutionality of RCW 43.43.7541. *See Lundy*, 176 Wn. App. at 103 n.4.

C.     *Postjudgment motion to withdraw guilty plea*

Mr. Valdez next argues that the trial court erred by not complying with CrR 7.8(c)(2) and (3). He argues that CrR 7.8(c)(2) requires a trial court to make a specific finding that the motion is timely and fits within CrR 7.8(c)(2)(i) or (ii) before issuing a substantive decision on the motion.

The State responds that Mr. Valdez did not properly appeal the March 23, 2015 order denying his postjudgment motion to withdraw his guilty plea. The State makes a two-fold argument. First, both of Mr. Valdez's notices of appeal were ineffective because they were filed before the trial court considered the motion or entered its order.

11

Second, Mr. Valdez's March 16, 2015 notice of appeal was limited to his appeal of the judgment and sentence.

RAP 7.2(e) authorizes trial courts to consider postjudgment motions after an appeal has been accepted. Further, RAP 7.2(e) generally requires any party wishing to appeal the postjudgment order to timely file a separate notice of appeal. *See* RAP 5.1(f) (A party wishing to appeal a trial court decision entered pursuant to RAP 7.2 must initiate a separate review); *see also Glass v. Windsor Navigation Co.*, 81 Wn.2d 726, 730, 504 P.2d 1135 (1973) ("A premature notice of appeal is totally ineffective, not merely defective."). Further, RAP 5.3(a)(3) specifies that a notice of appeal must "designate the decision or part of decision which the party wants reviewed" and, in general, this court will not review an order that was not designated in the notice of appeal. *See* RAP 2.4(a); *see also Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 378, 46 P.3d 789 (2002).

Here, Mr. Valdez failed to properly appeal the March 23, 2015 order denying his motion to withdraw his guilty plea. His premature notices of appeal that did not identify the yet to be entered order were ineffective in this regard. We therefore decline to review the March 23, 2015 order.

12

*SAG issue: Vacation of guilty plea because judgment and sentence failed to state that plea was for accomplice liability only*

Mr. Valdez filed a SAG that indicated he pleaded guilty to complicity to second degree murder, but was sentenced for actual second degree murder. According to Mr. Valdez, he did not knowingly plead to second degree murder, and his guilty plea should be withdrawn and his case remanded for a new trial to prevent this "manifest injustice."

"Due process requires that a defendant's guilty plea must be knowing, intelligent, and voluntary." *State v. Codiga*, 162 Wn.2d 912, 922, 175 P.3d 1082 (2008). "The defendant's burden when seeking to withdraw a plea is demanding because ample safeguards exist to protect the defendant's rights before the trial court accepts the plea." *State v. DeClue*, 157 Wn. App. 787, 792, 239 P.3d 377 (2010). CrR 7.8 governs postjudgment motions to withdraw guilty pleas. CrR 4.2(f). Where, as here, a criminal defendant attempts to withdraw his guilty plea after judgment, the motion must meet the requirements of both CrR 4.2(f) and CrR 7.8(b). *See State v. Lamb*, 175 Wn.2d 121, 128, 285 P.3d 27 (2012).

Under CrR 4.2(f), the trial court "shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." "[A] 'manifest injustice' is 'an injustice that is obvious, directly observable, overt, [and] not obscure.'" *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505

13

(1991) (quoting *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)). Courts have found instances of manifest injustice where (1) effective assistance of counsel was denied, (2) the plea was not ratified by the defendant, (3) the plea was not voluntary, or (4) the plea agreement was not kept. *Id.* (quoting *Taylor*, 83 Wn.2d at 597). However, "meeting only the manifest injustice standard of CrR 4.2(f) is insufficient when considering a postjudgment motion to withdraw a guilty plea." *Lamb*, 175 Wn.2d at 129.

Under CrR 7.8(b), a court may relieve a party from a final judgment based on mistake, inadvertence, excusable neglect, newly discovered evidence, or the CrR 7.8(b)(5) catchall "[a]ny other reason justifying relief from the operation of the judgment." To obtain relief under CrR 7.8(b)(5), a defendant must show "extraordinary circumstances" not covered by any other section of CrR 7.8. *State v. Aguirre*, 73 Wn. App. 682, 688, 871 P.2d 616 (1994). "'Extraordinary circumstances' must relate to 'irregularities which are extraneous to the action of the court or go to the question of the regularity of its proceedings.'" *Id.* (internal quotation marks omitted) (quoting *Shum v. Dep't of Labor & Indus.*, 63 Wn. App. 405, 408, 819 P.2d 399 (1991)).

Mr. Valdez's SAG is an attempt to withdraw his guilty plea, and as indicated above, he did not properly appeal the order denying his postjudgment motion to withdraw his guilty plea. Moreover, his argument is unpersuasive. It is well established that

14

No. 33198-9-III
*State v. Valdez*

"[t]here is no separate crime of being an accomplice; accomplice liability is principal liability." *State v. Toomey*, 38 Wn. App. 831, 840, 690 P.2d 1175 (1984); *see* RCW 9A.08.020(1). An accomplice has the same standard range sentence as a principal under the Sentencing Reform Act of 1981, chapter 9.94A RCW, with variations only coming into play when determining exceptional sentences. *See e.g., State v. Moore*, 73 Wn. App. 789, 798-99, 871 P.2d 642 (1994). The lack of any identifiable conviction and sentencing consequences between principal liability and accomplice liability supports our conclusions that Mr. Valdez has failed to demonstrate "extraordinary circumstances" under CrR 7.8(b), let alone "manifest injustice" under CrR 4.2(f).

Affirmed in part, remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Fearing, C.J.

Moreno, J.P.T.

15